1   PETER GERGELY (CO SBN 24564)
    APPEARING *PRO HAC VICE*
2   DANA JOZEFCZYK (CO SBN 41501)
    APPEARING *PRO HAC VICE*
3   GREG G. JOHNSON (CA SBN 247546)
    MERCHANT & GOULD, P.C.
4   1050 17th Street, Suite 1950
    Denver, Colorado 80265
5   Telephone:  (303) 357-1670
    Facsimile:  (303) 357-1671
6   pgergely@merchantgould.com
    djozefczyk@merchantgould.com
7   gjohnson@merchantgould.com

8   Attorneys for Plaintiffs-Counterdefendants
9   ENEL COMPANY, LLC and LEE B. CARGILL

10              UNITED STATES DISTRICT COURT

11           SOUTHERN DISTRICT OF CALIFORNIA

12   ENEL COMPANY, LLC, a California      )
     Limited Liability Company, and LEE B. )
13   CARGILL, an individual,              )   Case No. 3:12-cv-01369-IEG-WMC
                                          )
14              Plaintiffs,               )
                                          )
15       v.                               )
                                          )   **PLAINTIFFS' MEMORANDUM**
16   DAVID R. SCHAEFER, an individual,    )   **OF POINTS AND AUTHORITIES**
     LAKELAND ENTERPRISES, INC., a        )   **IN SUPPORT OF MOTION FOR**
17   South Carolina Corporation,          )   **PARTIAL SUMMARY**
     LAKELAND GEAR, INC., aka             )   **JUDGMENT ON DEFENDANTS'**
18   RIGHTLINE GEAR, a North Carolina     )   **THIRD AFFIRMATIVE**
     Corporation, CABELA'S                )   **DEFENSES OF ESTOPPEL,**
19   INCORPORATED, a Delaware             )   **LACHES, AND WAIVER**
     Corporation, SPORTSMAN'S             )
20   WAREHOUSE, INC., a Utah              )
     Corporation, and AMAZON.COM, INC.,   )
21   a Delaware Corporation,              )
                                          )
22              Defendants.               )
                                          )
23   AND RELATED CROSS AND                )
                                          )
24   COUNTER CLAIMS                       )
                                          )
25

26

27

28

                               1

Plaintiffs ENEL Company, LLC ("ENEL") and Lee B. Cargill ("Cargill") (hereinafter "Plaintiffs") respectfully submit this Memorandum of Points and Authorities in Support of Motion for Partial Summary Judgment on Defendants' Third Affirmative Defenses of Estoppel, Laches, and Waiver:

## I.   SUMMARY OF ARGUMENT

Rightline Gear's Third Affirmative Defense of estoppel, laches, and waiver fails because it is personal to Lakeland Enterprises and Rightline Gear is not a successor-in-interest in privity with Lakeland Enterprises.

## II.   BACKGROUND

On June 6, 2012, ENEL filed a patent infringement suit against numerous parties, several of whom have settled.   Settlement discussions with Rightline Gear stalled over a narrow legal dispute concerning whether or not Rightline Gear is a legal successor-in-interest in privity with Lakeland Enterprises that would be entitled to assert the equitable defenses of laches, waiver and estoppel that are personal to Lakeland Enterprises.

Rightline Gear asserted these defenses in its Third Affirmative Defense for Laches/Estoppel/Waiver (DKT. 18, p. 8, ¶ 40).  In its Reply to Affirmative Defenses, Plaintiffs asserted that "any claim of estoppel, laches and/or waiver by any other party is personal to that party and is not a defense to [Rightline Gear]." (DKT. 27, p. 3, ¶ 17).  Rightline Gear's Third Affirmative Defense stands or falls

2

on this discrete legal issue,[1] which can be resolved by applying Federal Circuit and South Carolina case law to the "Contract for Purchase and Sale of Assets" between Lakeland Enterprises and Rightline Gear (hereinafter "Asset Purchase Agreement") (Ex. A).

Plaintiffs' Motion seeks an order holding that Rightline Gear is not a legal successor-in-interest in privity with Lakeland Enterprises, and therefore not entitled to assert the laches, waiver and estoppel equitable defenses that are personal to Lakeland Enterprises. Upon dismissal of these defenses, Plaintiffs believe that settlement negotiations may resume.

## III.   STANDARD OF REVIEW

One of the principal purposes of summary judgment is to identify and dispose of factually unsupported claims and defenses. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548 (1986). Summary judgment shall be granted where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *State of California v. Campbell*, 138 F.3d 772, 780 (9th Cir. 1998). Summary judgment is a proper

---

[1] Plaintiffs assert that Schaefer and Lakeland Enterprises' defenses of laches, waiver and estoppel are not meritorious, however, as to those Defendants, the issues are heavily factual, and therefore not susceptible to motion practice. In contrast, the present dispute as to Rightline Gear concerns a legal interpretation of a written contract.

3

method to dispose of meritless affirmative defenses.  Fed. R. Civ. P. 56(a);

Advisory Committee Notes to the 2010 Amendments to Rule 56, sub. (a).

## IV.    RIGHTLINE GEAR IS NOT A LEGAL SUCCESSOR-IN-INTEREST IN PRIVITY THAT CAN ASSERT LAKELAND ENTERPRISES' PERSONAL DEFENSES OF LACHES, WAIVER AND ESTOPPEL

### A. Legal Principles Concerning Successors and Privity

Equitable defenses such as laches, waiver and estoppel are personal to the

party asserting them.  *A.C. Aukerman Co. v. R.L. Chaides Constr. Co.*, 960 F.2d

1020, 1032 (Fed. Cir. 1992).  A limited exception allows a legal successor in

privity to assert these defenses if they would be available to the predecessor.  In the

first case to address this issue, the Federal Circuit stated:

> The district court properly held Litton liable for the knowledge of interest to Contromatics of the allegation of infringement because Litton was the successor in interest to Contromatics.  ***The corollary to that holding*** is that Litton is entitled to rely on the lack of communication to Contromatics, as well as to itself, following the letter.

*Jamesbury Corp. v. Litton Indus. Prods., Inc*., 839 F.2d 1544, 1555 (Fed.

Cir.1988), *overruled on other grounds*, *A.C. Aukerman*, 960 F. 2d at 1038-39

(emphasis added).  While not mentioning the doctrine of privity, the Federal

Circuit held that because Litton was the legal successor to Contromatics for

purposes of constructive notice of infringement, it was the legal successor to

Contromatics for purposes of asserting Contromatics' equitable defense of

estoppel.  *Id.*  Notably, Litton purchased the entirety of Contromatics:

4

"Contromatics Corp. began operations in 1961.  UTD Corp. purchased

Contromatics in 1967.  Litton Industries, Inc., then purchased UTD Corp. in 1968."

*Jamesbury*, 839 F.2d at 1546 n.2.

The Federal Circuit recently held that a legal successor-in-interest in privity

with its predecessor could assert the defense of equitable estoppel held by its

predecessor.  *Radio Sys. Corp. v. Lalor*, 2013 U.S. App. LEXIS 4644 at *33 (Fed.

Cir. Mar. 6, 2013) ("Our precedent confirms that equitable estoppel applies to

successors-in-interest where privity has been established.") (citing *Jamesbury*).

The district court's findings of privity, though not challenged on appeal, were that

Radio Systems  "(1) wholly owns Innotek, (2) is headed by the same individual as

Innotek, (3) purchased Innotek to incorporate its designs and products into its own

product lines, and (4) exerts substantial control over Innotek."  *Id.* at *11.

Whether the term "privity" or "successor-in-interest" is used, the result is the

same - *only* a legal successor-in-interest in privity may assert equitable defenses

personal to its predecessor.  There are several Federal Circuit cases addressing the

issue of privity in the context of laches, estoppel and other defenses, such as res

judicata and assignor estoppel.  The common theme from these cases is that there

was a complete transfer of a corporation or financial control between the parties.

Before addressing the Federal Circuit cases, it is important to note that the

doctrine of privity is closely tied to the doctrine of *res judicata*, which binds parties

5

and privies to judgments.  Accordingly, privity is often addressed as part of a *res judicata* analysis.  The Second Circuit, in particular, has specifically held that an asset purchaser, who bought selected assets, and no liabilities, is not in privity with the seller for purposes of *res judicata*.  *Esquire Trade & Finance, Inc. v. CBQ, Inc.*, 562 F.3d 516, 520 (2nd Cir. 2009).

Additionally, the Asset Purchase Agreement is governed by South Carolina law.  Ex. A, Section 7.8.  Similar to Second Circuit law rejecting privity in the context of an asset purchase, a purchaser under South Carolina law does not have successor liability unless 1) there was an agreement to assume debts of the seller; 2) the circumstances surrounding the transaction warrants a finding of a consolidation or merger of the two corporations; 3) it was a mere continuation of the predecessor; or 4) the transaction was fraudulent for the purpose of wrongfully defeating creditors' claims.  *Brown v. American Ry. Express Co.*, 123 S.E. 97, 98-99 (1924).  An arms-length purchaser of assets with no continuity of officers, directors, or shareholders with the seller is not a mere continuation of the seller.  *Simmons v. Mark Lift Industries, Inc.*, 622 S.E.2d 213, 215 & n.1 (2005).

The same result obtains under Federal Circuit case law analyzing legal successors or privity.  The cases are summarized as follows:

- *Radio Sys. Corp. v. Tom Lalor & Bumper Boy, Inc.*, 709 F.3d 1124, 1131 (Fed. Cir. 2013):  Legal successor in privity established:  Successor wholly owns predecessor, is headed by the same individual as predecessor,

purchased predecessor to incorporate its designs and products into its own product lines, and exerts substantial control over predecessor.

- *Gillig and Triple Tee Gold, Inc. v. Nike, Inc.*, 602 F.3d 1354, 1362 (Fed. Cir. 2009):  Privity not established.  Officer and principal owner of plaintiff corporation not in privity with corporation.  Control of party is not sufficient to establish privity, "absent a showing that the corporate form has been ignored."

- *A. Stucki Co. v. Worthington Indus. Inc.*, 894 F.2d 593, 596-97 (Fed. Cir. 1988):  Legal successor not established:  Purchaser acquired stock of seller, and a stock sale transaction does not make purchaser a legal successor.

- *Eli Lilly and Company v. Premo Pharmaceutical Laboratories, Inc.*, 843 F.2d 1378, 1382 (Fed. Cir. 1988):  Privity not established:  Purchaser acquired NDA asset, but did not acquire personnel, manufacturing, or sales facilities for the infringing product and did not assume any liabilities of seller.  As such, purchaser is not in privity with seller.

- *Jamesbury Corp. v. Litton Industrial Products, Inc.*, 839 F.2d 1544, 1555 (Fed. Cir. 1988):  Legal successor established.  Buyer purchased entire corporation.

Additionally, the U.S. Court of Federal Claims analyzed a trio of cases from the Federal Circuit addressing the issue of privity in the assignor estoppel context. The court stated that "Federal Circuit precedents indicate that a degree of financial interconnectedness is significant to determining whether there is privity. …Without a showing that the government has significant influence or control over IES, a finding of privity becomes more difficult." *Earth Resources Corp. v. U.S.*, 44 Fed. Cl. 274, 286 (1999) (finding no privity).

Taken together, a common theme from the case law emerges.  In order to be deemed a legal successor in privity with another entity, there must be a complete

purchase of the entity, or domination and control of the other entity.  None of these cases suggest that a purchaser of selected assets only, and no liabilities, is a legal successor in privity with the seller.

**B.  Rightline Gear Is Not a Successor-in-Interest in Privity Under the Asset Purchase Agreement**

On August 19, 2008, Lakeland Enterprises sold certain of its assets to Lakeland Gear, n/k/a Rightline Gear.  (Crossclaim, ¶ 7).  The Asset Purchase Agreement included transfer of only the "the non-real property of Seller…"  Ex. A, p.1.  Transferred assets were limited to equipment, inventory, goodwill, designs, prototypes, and other collateral documents.  Ex. A, Section 1.1 & Schedule 1.1. No manufacturing facilities, real property, leases, cash, bank accounts, or accounts receivable or contracts were transferred.  *See id.*  The agreement specifically excluded accounts receivable accruing to Lakeland Enterprises before the Effective Date.  Ex. A, Section 7.5.

Further, Rightline Gear explicitly excluded assumption or liability for any of Lakeland Enterprises' contracts, debts, obligations or liabilities.  Ex. A, Section 5.1 and Schedule 5.1 ("Assumed Liabilities:  None").  Accounts payable arising prior to the Effective Date are the obligation of Lakeland Enterprises.  Ex. A, Section 7.5.  The Asset Purchase Agreement also has a detailed indemnity provision making Lakeland Enterprises responsible for pre-Effective Date acts and Rightline Gear responsible for post-Effective Date acts.  Ex. A, Section 7.7.

The Asset Purchase Agreement is an arms-length asset sale of selected assets only with no continuity of officers, directors and shareholders between Rightline Gear and Lakeland Enterprises, and no assumption of liabilities.  Moreover, Rightline Gear does not have any control over Lakeland Enterprises, much less the type of domination and control required to establish privity.

Rightline Gear is therefore not a successor-in-interest in privity with Lakeland Enterprises.  *Gillig*, 602 F.3d at 1362 (control of party does not establish privity absent a showing that corporate form has been ignored); *Eli Lilly*, 843 F.2d 1378 (no privity established; NDA asset acquired, but no personnel, manufacturing or sales facilities transferred and purchaser did not assume liabilities of seller); *A. Stucki*, 849 F.2d at 596-97 (stock sale transaction does not make purchaser a legal successor); *Earth Resources*, 44 Fed. Cl. at 286 (privity is difficult to establish in the absence of significant influence or control over a party); *Esquire Trade*, 562 F.3d at 520 (asset purchase of selected assets only does not establish privity); *Simmons*, 622 S.E.2d at 215 & n.1 (asset purchase does not create successor liability); *compare Radio Systems*, 709 F.3d at 1131 (legal successor in privity when successor wholly owns predecessor, is headed by the same individual as predecessor, incorporated predecessor's designs, and exerts substantial control over predecessor); *Jamesbury*, 839 F.2d at 1555 (purchaser was legal successor because it purchased entire corporation).

# V.    <u>CONCLUSION</u>

Plaintiffs respectfully request that the Court grant Plaintiffs' Motion for Partial Summary Judgment on Defendants' Third Affirmative Defense of Estoppel, Laches, and Waiver holding that Rightline Gear is not a legal successor-in-interest in privity with Lakeland Enterprises that is entitled to assert the equitable defenses of laches, waiver and estoppel that are personal to Lakeland Enterprises. Accordingly, Plaintiffs request that the Court enter partial summary judgment in favor of Plaintiffs and against Rightline Gear on Rightline Gear's Third Affirmative Defense of laches, waiver and estoppel.

Respectfully submitted,

MERCHANT & GOULD P.C.

Date: July 8, 2013                    <u>*s/ Peter Gergely*</u>
                                       Peter Gergely (*pro hac vice*)

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a true and correct copy of the foregoing **PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT ON DEFENDANTS' THIRD AFFIRMATIVE DEFENSES OF ESTOPPEL, LACHES, AND WAIVER** was served on July 8, 2013, on the following by the methods indicated below pursuant to Civil Local Rule 5.4(c).

### <u>Electronic Service Via CM/ECF</u>

**Jacob Wharton**
Womble Carlyle Sandridge & Rice, LLP
1 West 4th Street
Winston-Salem, NC 27101
Email: jwharton@wcsr.com
**Behrooz Shariati**
Womble Carlyle Sandridge & Rice, LLP
10050 N. Wolfe Road, Suite 260
Cupertino, CA 95014
Email: bshariati@wcsr.com
*Attorneys for Defendants Lakeland Gear, Inc., Cabela's Incorporated, and Sportsman's Warehouse, Inc.*

**Robert T. Cruzen**
Klarquist Sparkman, LLP
121 S.W. Salmon Street, Suite 1600
Portland, OR 97204
Email: rob.cruzen@klarquist.com
*Attorneys for Defendant Amazon.com, Inc.*

**Christopher R. Smith**
Lindquist & Vennum PLLP
4200 IDS Center, 80 South 8th Street
Minneapolis, MN 55402
Email: csmith@lindquist.com
*Attorneys for Defendant Sportsman's Warehouse, Inc.*

**Gary L. Eastman**
Gary L. Eastman, Esq., APLC
401 West "A" Street, Suite 1785
San Diego, CA 92101
Email: gary@garyeastman.com
*Attorneys for Defendants David R. Schaefer, and Lakeland Enterprises, Inc.*

11

1

2                                          *s/ Peter Gergely*
                                           Peter Gergely
3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## <u>TABLE OF EXHIBITS</u>

Exhibit A:  Asset Purchase Agreement ....................................................................1

# EXHIBIT A

STATE OF SOUTH CAROLINA  )

COUNTY  OF  OCONEE      )

**CONTRACT FOR PURCHASE AND
SALE OF ASSETS**

**THIS AGREEMENT** is made and entered into this 19 day of _Aug_ 2008, by and between **Lakeland Enterprises, LLC** (hereinafter referred to as "Seller") and **Lakeland Gear Inc.** (hereinafter referred to as "Purchaser").

W I T N E S S E T H :

**WHEREAS**, Seller desires to sell and Purchaser desires to purchase from Seller, all or substantially all of the non-real property assets of Seller as hereinafter set forth upon the terms and conditions and for the purchase price as hereinafter stated; and

**WHEREAS**, Seller and Purchaser are desirous of reducing the terms and conditions of the purchase and sale of said assets to writing.

**NOW, THEREFORE**, for and in consideration of the mutual covenants and conditions contained herein and for other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the parties hereto agree as follows:

**ARTICLE I.**

**AGREEMENT TO SELL AND PURCHASE ASSETS**

Section 1.1  Seller's Agreement to Sell Assets.  Upon the terms and conditions hereinafter set forth, as of the Effective Date (hereinafter defined), Seller will transfer and deliver to Purchaser, free of all liens, taxes, encumbrances, or outstanding interests whatsoever the assets of Seller set forth on **"Schedule 1.1"** attached hereto and made part of this Agreement by reference (the "Assets").

Section 1.2  Purchase Price.  The consideration for the purchase of the Assets shall be the sum of Four Hundred Seventy Five Thousand ($475,000.00) Dollars, subject to adjustment for actual inventory value as of the Effective Date *(See Section 1.2(c)(i) below)* (the "Purchase Price"). The sum of $4,000.00 (the "Earnest Money") shall be provided to Seller at the time of execution of this Agreement and applied against the Purchase Price at Closing.  The Purchase Price shall be payable as follows:

(a)      The Purchaser shall pay to Seller at Closing in certified or wired funds the sum of $466,000.00, which excludes the warranty escrow of $5,000.00 described in Section 1.2(c)(ii) which shall be payable jointly to Purchaser and Seller, and accounts for application of the Earnest Money.

(b)     The allocation of the Purchase Price to the Assets shall be as provided on **"Schedule 1.2"** attached hereto and incorporated herein by reference.

(c)     <u>Escrows</u>.

(i) **Inventory Escrow.**     Actual inventory value as of the Effective Date will be determined within 30 days after Closing and $10,000.00 of Seller's proceeds from Closing shall be held in escrow by a joint bank account ~~Purchaser's attorney~~ until the actual inventory value has been determined using the Inventory Pricing Criteria contained on **Schedule 1.1B** attached (the "Inventory Escrow") and agreed upon by the parties. The Inventory escrow will distributed by Purchasers' attorney to the parties based upon the actual inventory values as agreed upon by the parties in writing. In the event the actual inventory value exceeds $75,000.00, Seller shall be entitled to receive the $10,000.00 Inventory Escrow and Purchaser shall pay to Seller the amount by which the actual inventory value exceeds $75,000.00 within 2 days of the final inventory valuation. If the actual inventory value is less than $65,000.00, the $10,000.00 Inventory escrow shall be returned to Purchaser and Seller shall pay to Purchaser the amount by which the actual inventory value is less than $65,000.00 within 2 days of the final inventory valuation.

(ii) **Warranty Escrow.**     At Closing, the amount of $5,000 of Seller's proceeds shall be paid jointly to Seller and Purchaser who shall deposit said monies in a joint bank account requiring signatures from the principals of the Purchaser and Seller for disbursements (the "Warranty Escrow"). This account shall be held as an escrow account for a period of two years from the Effective Date to be used to reimburse Purchaser for documented warranty items and returns related to sales made by Seller prior to the Effective Date, but said reimbursement shall be limited to the Purchaser's cost of the returned product, plus the cost of ground shipping the replacement product to the consumer. Purchaser shall make payment of such valid return and warranty claims as they arise and shall present documentation for same to Seller on or about the first and second anniversary date of the Effective Date and the amounts agreed upon by Purchaser and Seller as valid warranty claims and returns shall be disbursed to Purchaser within 20 days of said Anniversary dates, with any remaining balance of the Warranty Escrow returned to Seller after all payments due to Purchaser have been made.

Section 1.3   <u>Fair Consideration</u>. The parties recognize, affirm and agree that the consideration to be paid constitutes fair, reasonable and good consideration for the Assets acquired by Purchaser.

RIGHTLINE 000002   Exhibit A
Page 3

Section 1.4  Closing and Effective Date.  Unless otherwise agreed by the parties, the closing of the sale and purchase of Assets shall take place on or before August 19, 2008 (the "Closing") at the offices of Seller, with an effective date for consummation of the transaction being August 20, 2008 (the "Effective Date").

## ARTICLE II.

### REPRESENTATIONS AND WARRANTIES OF SELLER

Seller and David Shaefer, jointly and severally, warrant and represent to Purchaser as follows:

Section 2.1  Approval.  The Seller has full power and authority to carry on its business as it is now or was being conducted and to consummate this transaction pursuant to the terms contained herein.

Section 2.2  Title to Assets.  Seller has good and valid title to all of the Assets enumerated in the attached "Schedule 1.1", free of all security interests and other encumbrances.  Said Assets are not subject to any liens for federal or state taxes.  Seller has full power and lawful authority to sell, transfer and assign the Assets to Purchaser.

Section 2.3  Organization and Standing.  Seller is a limited liability company duly organized, validly existing and in good standing under the laws of the State of South Carolina, and is duly qualified to do business as a foreign limited liability company in states where it is required to be so qualified.

Section 2.4  Authorization.  This Agreement and the agreements referred to herein have been duly and validly authorized, executed and delivered by Seller and the other parties thereto and constitute the legal, valid and binding obligations of Seller and such other parties, enforceable against Seller and such other parties in accordance with their respective terms.

Section 2.5  No Conflicts.  Seller's execution, delivery and performance of this Agreement and the other documents and agreements referred to herein and the consummation of the transactions contemplated hereby and thereby, do not and will not (i) conflict with or violate any provision of any law, judgment, governmental rule, regulation or order binding upon Seller or of Seller's organizational documents, or (ii) result in the breach of, or the imposition of any lien, charge, encumbrance or security interest on any of the Assets pursuant to, or constitute default under, any agreement or instrument to which Seller is a party or by which Seller is or the Assets are bound.

Section 2.6  Litigation and Other Proceedings.  Neither Seller nor its sole member is a party to any pending or threatened claim, action, suit, investigation or proceeding, nor is it subject to any order, judgment or decree that would affect the Assets or the business of Seller transferred hereby.

Page 3

RIGHTLINE 000003

Section 2.7  Payment of Taxes.  Seller has paid in full all applicable sales, ad valorem, employment and other applicable taxes relating to the ownership and operation of its business or otherwise relating to the Assets, except for accrued taxes not yet due or taxes the payment of which is being contested in good faith.

Section 2.8  Inventory.  All of Seller's inventory is in good and marketable condition and was acquired and has been maintained in the ordinary course of business in accordance with Seller's regular business practices. Seller's inventory consists of items of a quality and quantity usable and saleable in the ordinary course of business.

Section 2.9  No Changes.  Seller has not (a) operated its business except in the ordinary course of business; (b) incurred any debts, liabilities or obligations, except as in the ordinary course of business and disclosed to the Purchaser; (c) mortgaged, pledged or subjected to lien or other encumbrance any of its assets, tangible or intangible, except in the ordinary course of business; (d) sold or transferred any of its tangible assets, except in the ordinary course of business; or (e) suffered any losses or waived any rights which might have a material adverse effect on the business, financial condition, results of operations, properties or assets of Seller.

Section 2.10  Full Disclosure.  To Seller's and David Schaefer's knowledge, all statements, representations and warranties made by Seller or David Schaefer to the Purchaser herein are true and correct.  No representation or warranty of Seller or David Schaefer herein, including, without limitation, the information in any schedules or exhibits attached hereto, contains any untrue statement of material fact or omits to state any material fact necessary in order to make the statements herein, in light of the circumstances in which they are made, not misleading.

Section 2.11  Force and Effect.  The representations and warranties made by Seller and David Schaefer above shall be valid as of the date of this Agreement, shall be deemed to be reasserted and made again, and be of full force and effect as of the Closing and Effective Date.

THE REPRESENTATIONS AND WARRANTIES LISTED ABOVE ARE THE ONLY REPRESENTATIONS AND WARRANTIES GIVEN BY SELLER.  PURCHASER ACKNOWLEDGES THAT IT HAS HAD AN ADEQUATE OPPORTUNITY TO INSPECT THE ASSETS AND, EXCEPT AS SET FORTH ABOVE, AGREES TO TAKE THEM IN "AS IS" CONDITION.  SELLER EXPRESSLY DISCLAIMS ANY IMPLIED WARRANTY OF MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE.

RIGHTLINE 000004   Exhibit A
Page 5

## ARTICLE III.

### REPRESENTATIONS AND WARRANTIES OF PURCHASER

Purchaser and Loran Evans, jointly and severally, warrant and represent to Seller as follows:

Section 3.1   Approval.   The Purchaser has full power and authority to consummate this transaction pursuant to the terms contained herein.

Section 3.2   Nature of Representations and Warranties.   The representations and warranties made by Purchaser and Loran Evans shall be valid as of the date of this Agreement, shall be deemed to be reasserted and made again, and be of full force and effect as of the Closing and Effective Date.

### ARTICLE IV.

### CONDITIONS TO CLOSING

A.   Purchaser's Right to Terminate.   Purchaser shall have the right to terminate this Agreement in the event that the representations and warranties of Seller herein contained are not true in all material respects when made or are not true in all material respects on and as of the Closing.  In addition, Purchaser may terminate this Agreement if he does not receive a reasonable Non-Compete Agreement from Diane Huntzinger pursuant to which Diane Huntzinger d/b/a 4x4 Trucktents agrees not to design, manufacture, or import her own truck tents, SUV tents, car back carriers, sleeping pads, or car top carriers. In the event the above contingencies are not met at or before Closing, Seller shall return the Earnest Money in full to Purchaser as Purchaser's sole remedy, this Agreement shall be null and void and the parties shall have no further obligations to each other.

B.   Seller's Right to Terminate.   Seller shall have the right to terminate this Agreement in the event that the representations and warranties of Purchaser herein contained are not true in all material respects when made or are not true in all material respects on and as of the Closing Date with the same force and effect as though made on and as of the Closing and shall have the right to retain the Earnest Money as liquidated damages and not as a penalty and to pursue any and all other remedies available to Seller provided under the statutory and common law.

### ARTICLE V.

### LIABILITIES OF SELLER

Section 5.1       Purchaser will not assume or become liable on any contract of the Seller or for any indebtedness, obligations or liabilities of the Seller, except as expressly provided on Schedule 5.1 (the "Assumed

RIGHTLINE 000005   Exhibit A
Page 6

Liabilities").

    <u>Section 5.2</u>    The Seller shall file all tax returns required to be filed following the Effective Date in a timely manner (unless granted an extension by the appropriate taxing authority, and then in accordance with the terms of such extension), and shall timely pay all taxes due with respect to the operation of Seller's business prior to the Effective Date.

<strong>ARTICLE VI.</strong>

<strong><u>TRANSACTIONS AT CLOSING</u></strong>

6.1    <u>Transactions at Closing</u>.    At the Closing, each of the following transactions shall occur:

    6.1.1    <u>The Seller's Performance</u>.    At the Closing, the Seller shall deliver to Purchaser the following:

        (i)    such good and sufficient bills of sale, assignments and other instruments of conveyance as may be necessary or appropriate to effectively vest in Purchaser good and marketable title to the Assets;

        (ii)    an Agreement Ancillary to Sale of Business Assets (the "Ancillary Agreement") in substantially similar form to the agreement attached hereto as **Exhibit A** executed by David Schaefer; and

        (iii)    Diane Huntzinger's executed Ancillary Agreement (collectively with the Ancillary Agreement the "Ancillary Agreements"); and

        (iv)    Unanimous Consent of the Member of Seller authorizing this transaction and authorizing David Schaefer to execute all documents necessary to consummate the transaction described herein; and

        (v)    any and all other documents reasonably requested by Purchaser necessary to convey the Assets.

    6.1.2    <u>The Purchaser's Performance</u>.    At the Closing, the Purchaser shall deliver to the Seller the following:

        (i)    cash by certified checks or wire transfers in the amounts described in Section 1.2(a) hereof;

        (ii)    the executed Ancillary Agreements; and

        (iii)    Unanimous Consent of the Shareholder(s) of Purchaser authorizing this transaction and authorizing Loran Evans to execute all documents necessary to consummate the transaction described herein; and

        (iv)    any and all other documents reasonably requested by Seller and necessary to consummate the transaction.

Page 6

## ARTICLE VII.

### MISCELLANEOUS

Section 7.1  Fees and Expenses.  Except as otherwise provided herein, each party hereto shall pay all respective fees and expenses, including but not limited to, legal and accounting fees, incurred by each incident to this sale and purchase.  All personal property taxes and business license fees, if any, shall be prorated as of the Effective Date at closing, unless such information cannot be obtained at closing, in which case reconciliation of the prorated amounts shall take place at the time said amounts become due.

Section 7.2  Assignment of Agreement.  This agreement shall not be assignable by either party except with the prior written consent of the other party.

Section 7.3  Notices.  Any notices or documents given hereunder shall be in writing and shall either be personally delivered, or mailed by certified mail, postage prepaid, return receipt requested, to the following addresses:

| | |
|---|---|
| If to Seller: | Lakeland Enterprises, LLC<br>Attn: David Schaefer<br>710 Topaz Court<br>Seneca, S.C. 29672 |
| If to Purchaser: | Lakeland Gear Inc.<br>Attn: Loran Evans<br>128 C La Mancha Drive<br>Asheville, N.C. 28805 |

Any notice, if mailed, shall be deemed to have been given when mailed.  Any party may designate a new address upon notice given in the manner prescribed herein.

Section 7.4  Cooperation.  The parties agree that each will fully cooperate with the other and the other's counsel and accountants in connection with any steps required to be taken as part of their respective obligations under this Agreement.  Each party agrees that each will use their best efforts to cause all conditions to the obligations under this Agreement to be satisfied as promptly as possible, and neither party will undertake a course of action inconsistent with this Agreement or which would make any representations, warranties or agreements by that party in this Agreement untrue or any conditions precedent to that party's obligations under this Agreement impossible to satisfy at, prior to, or after the Closing.

Page 7

RIGHTLINE 000007

Section 7.5  Accounts Receivable and Accounts Payable.  Notwithstanding anything herein to the contrary, Purchaser and Seller acknowledge and agree that all accounts receivable accruing to Seller for services performed prior to the Effective Date shall be the property of Seller, and all accounts payable arising prior to the Effective Date shall be the obligation of Seller.

Section 7.6  Transition Period.  Seller agrees that for a transition period ending September 19, 2008, Seller's principal shall be reasonably available for 8 hours per day (weekdays only) for training purposes and for additional consultation services as are more fully set forth in the Ancillary Agreement.

Section 7.7  Indemnification.  Seller and David Schaefer shall, jointly and severally, indemnify and hold Purchaser harmless from and against any and all claims, actions, costs and expenses, including attorney's fees, arising out of or any way related to any liabilities or obligations of the Seller with respect to products or services provided to customers of Seller prior to the Effective Date; any customer service disputes arising out of any state of facts existing prior to the Effective Date; any obligations or liabilities incurred by the Seller or any actions taken by the Seller prior to the Effective Date (all of said liabilities hereinafter collectively referred to as the "Retained Liabilities"), or any breach by Seller or David Schaefer of the representations and warranties contained herein. Purchaser and Loran Evans shall, jointly and severally, indemnify and hold Seller harmless from and against any and all claims, actions, costs and expenses, including attorney's fees, arising out of or any way related to any liabilities or obligations of the Purchaser in any way related to the business assets being sold hereunder arising on or after the Effective Date; any customer service disputes in any way related to the business assets arising out of any state of facts existing on or arising after the Effective Date; any obligations or liabilities incurred by the Purchaser or any actions taken by the Purchaser on or after the Effective Date, or any breach by Purchaser or Loran Evans of the representations and warranties contained herein.

Section 7.8  Governing Law, Counterparts, Entire Agreement, Waiver, Effectiveness, Assignment, Headings, Severability, Survival of Terms.

(a)  This Agreement shall be governed by and construed, interpreted and enforced in accordance with the laws of the State of South Carolina, without regard to conflict of law principles.

(b)  This Agreement may be executed in several counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same instrument representing the agreement of the parties relating to the subject matter hereof.

RIGHTLINE 000008

(c)     The parties or their agents have made no agreements or representations relating to the subject matter of this Agreement which are not set forth herein or herein provided for.

(d)     Any term or condition of this Agreement may be waived in writing at any time by the party or parties entitled to the benefit thereof.  No modification of this Agreement shall be valid unless made in writing and signed by the parties hereto.  The waiver of a breach of any term or condition of this Agreement shall not be deemed to constitute the waiver of any other breach of the same or any other term or condition.

(e)     This Agreement shall become effective when signed by all the parties in the respective places.  This Agreement shall inure to the benefit of and be binding upon the parties hereto and their respective heirs, successors and assigns.

(f)     The headings in this Agreement are for reference purposes only and shall not be used in construing or interpreting this Agreement.

(g)     If any one or more of the provisions contained in this Agreement shall be invalid, illegal or unenforceable in any respect under any applicable law, the validity, legality or enforceability of the remaining provisions contained herein shall not in any way be affected or impaired thereby.

(i)     The terms of this agreement and the obligations of the parties hereto shall survive the closing and continue to be binding and of full force and effect on and beyond the Effective Date. David Schaefer, in order to induce the Purchaser to consummate the transactions contemplated hereby, does hereby guarantee Seller's performance of each and every representation, warranty, covenant and agreement of Seller set forth herein.


**IN WITNESS WHEREOF**, the parties have hereunto executed this Agreement the day and year first above written.


SELLER:

Lakeland Enterprises, LLC

By:

Print Name: _David Schaefer_

Title: _OWNER_

David Schaefer

Page 9

**PURCHASER:**

Lakeland Gear Inc.

By:

Print Name: _Loran Evans_

Title: _President_

_Loran Evans_

RIGHTLINE 000010   Exhibit A
Page 11

## SCHEDULE 1.1

### Assets

1.     Equipment (See Schedule 1.1A attached) ;

2.     Inventory (See Schedule  1.1B attached); and

3.     Any and all Good Will associated with Seller's Business (including all trade Marks,  tradenames, logos, websites, domain names and phone number(s) <u>including 1-888-301-GEAR and 1-888-575-6652</u>) (See Schedule 1.1C attached for websites and domain names).

4.     All designs, conceptual sketches, material samples, packaging graphics and photography, completed prototype samples, correspondence with manufacturing facilities, prepared quotations and other research materials regarding the production of new Lakeland Enterprises LLC products that existed at the signing of the LOI through the Closing. These items include any SUV Tent prototypes, Self Inflating Sleeping Pad prototypes, Truck Tent Rechargeable Light prototypes and all products from competitor companies used to create or evaluate Lakeland Enterprises LLC products.

RIGHTLINE 000011

## SCHEDULE 1.1A

### Equipment

Equipment:
American heat sealer
heat cutter

RIGHTLINE 000012   Exhibit A
Page 13

## SCHEDULE 1.1B

### INVENTORY AND PRICING CRITERIA

#### Inventory List

*INVENTORY LIST TO BE ADDED*

#### Inventory Pricing Criteria

|  | Landed Cost Lakeland Inventory | |
| --- | --- | --- |
| Item | Part number | Cost each |
| Sport 3 Carrier | lgsport3 | $29.46 |
| Sport 1 Carrier | lgsport1 | $25.73 |
| RZ100 Carrier | lgrz100 | $29.11 |
| Classic Carrier | lgclassic | $24.02 |
| Saddlebag Carrier | lgsaddle | $39.08 |
| Liner bag | lgliner | $5.20 |
| Strap set | lgstrapr | $6.95 |
| Clipset with strap | lgclips | $5.60 |
| Avalanche tent | lgavl | $54.96 |
| 6.5 truck tent | lgtifs6.5 | $58.82 |
| 8 truck tent | lgtifs8 | $60.90 |
| 6 comp. Truck tent | lgtifs6 | $55.81 |
| 5.5 Crew Cab Truck tent | lgtifs5.5 | $56.33 |
| Lakeland Lock | lglock | $2.86 |
| Classic Frame kit | lgframe | $16.50 |
| J  flat hooks | flathook | $1.05 |
| roof pad/roll | lgpad | $75.77 |
| Poly roll, packing | poly roll | $106.43 |
| color truck tent box | color box | $1.80 |
| saddle box | brown box | $1.20 |
| spares, buckles, pole parts shock cord, | entire lot | $95.00 |

RIGHTLINE 000013   Exhibit A
Page 14

### SCHEDULE 1.1C

**Websites and Domain Names**

| | |
|---|---|
| LakelandGear.com | web site and domain name |
| PiggyPack.com | web site and domain name |
| Camp-Right.com | web site and domain name |
| Pack-Right.com | web site and domain name |
| Trucktents.info | web site and domain name |
| Cartopcarrier.com | web site and domain name |
| Carbackcarrier.com | web site and domain name |

| | |
|---|---|
| TruckTent.net | domain name only |
| Packright.info | domain name only |

Page 14

RIGHTLINE 000014

Exhibit A
Page 15

## SCHEDULE 1.2

### Allocation of Purchase Price

| | |
|---|---|
| Equipment | $200.00 |
| Inventory | $75,000.00 * |
| Good Will and other Intangibles | $399,800.00 |
| | |
| Total Purchase Price | $475,000.00* |

*The Inventory and Total Purchase Price figures are subject to adjustment based upon actual inventory value to be determined after closing as provided in Section 1.2 (c)(i) of this Agreement.

RIGHTLINE 000015   Exhibit A
Page 16

## SCHEDULE 5.1

### ASSUMED LIABILITIES

*NONE*

Page 16

RIGHTLINE 000016

## EXHIBIT A

**ANCILLARY AGREEMENT**

*SEE ATTACHED*

RIGHTLINE 000017   Exhibit A
Page 18

## AGREEMENT ANCILLARY TO SALE OF BUSINESS ASSETS

THIS AGREEMENT ANCILLARY TO SALE OF BUSINESS ASSETS ("Agreement") is made and entered into the ___ day of _August_, 2008, by and between **Lakeland Gear Inc.** ("Purchaser"), **Lakeland Enterprises, LLC** (the "Company") and **David Schaefer** (the "Sole Member" of the Company and collectively with the Company, the "Sellers").

### W I T N E S S E T H:

WHEREAS, the Purchaser has purchased certain of the assets of the Company pursuant to that certain Contract for Purchase and Sale of Assets dated _Aug 19_, 2008 by and between the Purchaser and the Company (hereinafter the "Purchase Agreement");

WHEREAS, the Purchaser will carry on the business operations and activities of the Company in substantially the same manner as such business was conducted by Company prior to the acquisition;

WHEREAS, as a material and vital inducement to the Purchaser for entering into the Purchase Agreement, and as a condition precedent to the consummation of the transactions contemplated thereby, Sellers have agreed to execute this Agreement which the Sellers acknowledge is essential to protect the Purchaser's business interest and investment in the assets of the Company; and

WHEREAS, Sellers acknowledge that Purchaser has paid and Sellers have received value for Sellers entering into this Agreement to abstain, under the conditions set forth below, from activities competitive with the business which they are selling to Purchaser;

NOW, THEREFORE, in consideration of the execution of the Purchase Agreement, the mutual covenants and obligations contained herein, and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Sellers and the Purchaser hereby agree as follows:

1. **Non-Competition.**

    1.1    Sellers each covenant and agree that for a period of five (5) years from the date of this Agreement, they will not engage in any internet or retail business related to the design, manufacture, sale, distribution or importation of bicycles and any items or products sold or prototyped by Company prior to the Effective Date contained in the Purchase Agreement, including, but not limited to, truck tents, SUV Tents, sleeping pads and mattresses, car back carriers and car-top carriers in North America.

    1.2    In view of the geographic scope and nature of the internet-based business in which the Purchaser is engaged (and in which the Company has been engaged), and recognizing the substantial sums to be paid to the Company pursuant to the Purchase Agreement, the Sellers expressly acknowledge that the restrictive covenants set forth in this Section 1 are necessary in order to protect and maintain the proprietary interests and other legitimate business interests of the Purchaser.

2. **Training and Consulting.**

    The Sole Member agrees to provide training to the Purchaser in the operation of the business and to provide assistance to Purchaser in running the business for no charge for up to 8 hours per weekday during normal business hours for a period commencing on August 19, 2008 and ending September 19, 2008 (the "Training Period"). For a period of one year from August 19, 2008 (the "Consulting Period"), the Sole Member shall be reasonably available to Purchaser for telephone consultations regarding the business. If Purchaser requires additional assistance from the Sole Member after the Training Period but during the Consultation Period, the Purchaser shall compensate the Sole Member as an independent contractor at a rate of $25 per hour for the first 15 hours and $45 per hour thereafter, plus

RIGHTLINE 000018   **Exhibit A**
**Page 19**

reimbursement of all reasonable costs incurred by the Sole Member in providing such services.

**3.      Waiver.**

     The waiver by any party or a breach of any provision of this Agreement by the other party shall not operate or be construed as a waiver of any subsequent breach, or of any of the parties' rights hereunder.

**4.      Attorney's Fees and Costs.**

     In the event any legal action is brought hereunder, the non-prevailing party shall reimburse the prevailing party for any and all costs and expenses incurred, including, but not limited to, attorneys' fees and other professional fees, arising from said action or the enforcement of the terms hereof.

**5.      Entire Agreement.**

     This Agreement and the Purchase Agreement constitute the entire agreement by the parties hereto with respect to the subject matter hereof and supersede all other agreements, undertakings, restrictions, warranties, or representations relating to said subject matter between the parties other than those set forth herein or in the Purchase Agreement. This Agreement may not be changed orally, but only by an agreement in writing, duly signed by the party against whom enforcement of any waiver, change, modification, extension or discharge is sought.

**6.      Governing Law.**

     The terms of this Agreement shall be governed by and construed in accordance with the laws of the State of South Carolina, without regard to conflict of law principles.

**7.      Confidentiality.**

     Sellers each acknowledge that, in connection with the consummation and performance of the transactions contemplated by the Purchase Agreement and this Agreement, each Seller will receive or have access to confidential and proprietary information and materials relating to the Purchaser's business, products, customers and prospects, including, without limitation, customer information, product information, product specifications, costs, designs, materials, suppliers, vendors, financial information, purchasing information, employee information, demographic information, information concerning the Purchaser's policies, procedures, processes, distribution and sales volume, product incentives and marketing information (whether or not such information is marked confidential) and other information concerning the Purchaser (collectively, "Confidential Information"). As a condition to the Purchaser's consummation of the transactions contemplated hereby and by the Purchase Agreement, during the term of this Agreement, and for a period of five (5) years after the expiration or termination hereof, each of the Seller's, on its own behalf and on behalf of its officers, directors, employees, managers, agents, advisors, representatives, heirs, successors and assigns (collectively, "Representatives") agrees to treat such Confidential Information and all analyses, compilations and other materials containing or based in whole or in part on any such Confidential Information, as confidential and shall not use such Confidential Information for any purpose without the express prior written consent of the Purchaser. Without such prior written consent of the Purchaser, unless required to do so by law, neither either Seller, nor its Representatives will (a) disclose any of the Confidential Information to any third party, or (b) use any of the Confidential Information for any purpose. Upon the Purchaser's written request, each Seller and its Representatives will promptly return to the Purchaser all copies of the Confidential Information furnished to or in the possession of such Seller or its Representatives, and such Seller and its Representatives will destroy all analyses, compilations and other materials based in whole or in part on such material. If either Seller or its Representatives are requested to disclose such Confidential Information, such Seller or its Representatives will give the Purchaser prompt notice of this request prior to the disclosure thereof.

     **IN WITNESS WHEREOF**, the parties have executed this Agreement under seal as of the date first written above.

RIGHTLINE 000019   Exhibit A
Page 20

**PURCHASER**

Lakeland Gear Inc.

By: _____

Name: Lora Evans

Its: President


**COMPANY**

Lakeland Enterprises, LLC

By: _____

Name: David Schaefer

Its: owner


Sole Member _____

David Schaefer

RIGHTLINE 000020   Exhibit A
Page 21

SETTLEMENT STATEMENT

SELLER:           LAKELAND ENTERPRISES, LLC

PURCHASER:      LAKELAND GEAR INC.

CLOSING DATE:    _Aug 19_ , 2008

PURCHASE PRICE:    *$475,000.00

|  | Purchaser: | Seller: |
|---|---|---|
| Checks at Closing to be paid by Purchaser via Certified or Bank Checks: |  |  |
| • Earnest Money payable to Seller | 4,000.00 |  |
| • Inventory Escrow payable *seller and purchaser* to ~~Purchaser's Attorney~~ *Jointly* | 10,000.00 |  |
| • Warranty Escrow payable to Seller and Purchaser Jointly *OS LE 8/19/08* | 5,000.00 |  |
| • Balance due at Closing payable to Seller | 456,000.00 |  |
| Attorney Fees and Costs | (POC) | (POC) |
| Due from Purchaser at Closing | $475,000.00 |  |
| Due to Seller at Closing |  | $460,000.00 |
| Plus Escrows |  | 15,000.00 |
| Total to Seller |  | *$475,000.00 |

Seller:                                   Purchaser:

LAKELAND ENTERPRISES, LLC           LAKELAND GEAR INC.

By: _____           By: _____

*Total Purchase Price is subject to adjustment post-closing for determination of actual inventory value being transferred.

## UNANIMOUS CONSENT OF THE MEMBER

## OF

## LAKELAND ENTERPRISES, LLC

## A SOUTH CAROLINA LIMITED LIABILITY COMPANY

The undersigned, being the sole member of LAKELAND ENTERPRISES, LLC, a South Carolina Limited Liability Company (the "LLC"), consents to the adoption of the following resolutions.

> **RESOLVED** that the non-real estate assets of the LLC shall be sold to Lakeland Gear Inc. for the sum of $475,000.00. It is

> **FURTHER RESOLVED** that David Schaefer, as Sole Member of the LLC, is authorized and directed to attend the closing and to sign any and all documents necessary to be signed on behalf of the LLC to consummate the sale.

These actions of the member are effective _Aug 19_, 2008. The unanimous consent of the member may be evidenced by his signature on one or more copies of this document, which shall be filed in the records of the LLC. The adoption of these resolutions by the unanimous written consent of the sole member has the effect of adoption of these resolutions by vote at a meeting of the members, and may be so described in any document.

_____
David Schaefer
Sole Member

_Aug 19_, 2008
Date

## AGREEMENT ANCILLARY TO SALE OF ASSETS

**THIS AGREEMENT ANCILLARY TO SALE OF ASSETS** (the "Agreement") is made and entered into the 19 day of August         , 2008, by and between **Lakeland Gear Inc.** (the "Purchaser") and **Dianne Huntzinger** (the "Principal") d/b/a 4x4 Trucktents.com (the "Company").

## W I T N E S S E T H:

**WHEREAS**, Lakeland Enterprises, LLC, (the "Seller") has or will sell substantially all of it assets to Purchaser (the "Assets") pursuant to that certain Contract for Purchase and Sale of Assets Agreement dated _____  ___, 2008, by and between the Purchaser and Seller (hereinafter the "Purchase Agreement"); and

**WHEREAS**, the Purchaser will be operating the Assets through its business which is or will be primarily engaged in the manufacture and distribution of camping-related products and bicycles (the "Business"); and

**WHEREAS**, the Seller and the Principal are siblings and the Principal, through her company, is engaged in marketing and selling camping-related products as a distributor;

**WHEREAS**, the Principal and Company (collectively the "Distributor") possess valuable knowledge with respect to the proprietary operations of the Business, which, if exploited in contravention of this Agreement, could seriously and irreparably affect the ability of the Purchaser to continue the Business;

**WHEREAS**, as a material and vital inducement to the Purchaser for entering into the Purchase Agreement, and as a condition precedent to the consummation of the transactions contemplated thereby, and in consideration of continuing to be able to act as a distributor of Purchaser's products, Principal has agreed to execute this Agreement which is essential to protect the Purchaser's Business and investment.

**NOW, THEREFORE,** in consideration of the mutual covenants and obligations contained herein, and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Purchaser and the Principal hereby agree as follows:

1.    **Non-Competition.**

    **1.1**    Principal covenants and agrees that from the date of this Agreement, she and/or Company will not, directly or indirectly, compete with Purchaser related to the Business by designing, manufacturing, selling, distributing or importing truck tents, SUV tents, car back carriers, sleeping pads, bicycles or car top carriers (the "Restricted Activities"). In consideration of the obligations of Principal and Company hereunder, Purchaser agrees to provide Company with pricing at a level equal to or lower than the lowest pricing Purchaser uses for sales to any distributor of its products while this Agreement is in effect.

1.2     For the purposes of this Agreement, the term "compete" shall mean: actively engaging, either on her own, or through any subsidiary, affiliate, partnership, joint venture, or agent, in the Restricted Activities without the express written consent of the Purchaser. Notwithstanding the foregoing, Principal may continue to act as a distributor for Purchaser which shall not be deemed a violation of this Agreement.

1.3     In view of the geographic scope and nature of the internet-based business in which the Principal is engaged (and in which the Company has been engaged), and recognizing the substantial sums to be paid to Seller pursuant to the Purchase Agreement, the Distributor expressly acknowledges that the restrictive covenants set forth in this Section 1 are necessary in order to protect and maintain the proprietary interests and other legitimate business interests of the Purchaser.

## 2.     Attorney's Fees and Costs.

In the event any legal action is brought hereunder, the non-prevailing party shall reimburse the prevailing party for any and all costs and expenses incurred, including, but not limited to, attorneys' fees and other professional fees, arising from said action or the enforcement of the terms hereof.

## 3.     Governing Law.

The terms of this Agreement shall be governed by and construed in accordance with the laws of the State of South Carolina, without regard to conflict of law principles.

## 4.     Confidentiality.

Distributor acknowledges that, in connection with the consummation and performance of the transactions contemplated by the Purchase Agreement and this Agreement, Distributor may receive or have access to confidential and proprietary information and materials relating to the Purchaser's business, products, customers and prospects, including, without limitation, customer information, product information, product specifications, costs, designs, materials, suppliers, vendors, financial information, purchasing information, employee information, demographic information, information concerning the Purchaser's policies, procedures, processes, distribution and sales volume, product incentives and marketing information (whether or not such information is marked confidential) and other information concerning the Purchaser (collectively, "Confidential Information"). As a condition to the Purchaser's consummation of the transactions contemplated hereby and by the Purchase Agreement, during the term of this Agreement, and for a period of five (5) years after the expiration or termination hereof, Distributor, on its own behalf and on behalf of its officers, directors, employees, managers, agents, advisors, representatives, heirs, successors and assigns (collectively, "Representatives") agrees to treat such Confidential Information and all analyses, compilations and other materials containing or based in whole or in part on any such Confidential Information, as confidential and shall not use such Confidential Information for any purpose without the express prior written consent of the Purchaser. Without such prior written consent of the Purchaser, unless required to do so by law, neither Distributor, nor its Representatives will (a) disclose any of the Confidential Information to any third party, or (b) use any of the Confidential Information for any

RIGHTLINE 000024   Exhibit A
Page 25

purpose. Upon the Purchaser's written request, Distributor and its Representatives will promptly return to the Purchaser all copies of the Confidential Information furnished to or in the possession of Distributor or its Representatives, and Distributor and its Representatives will destroy all analyses, compilations and other materials based in whole or in part on such material. If Distributor or its Representatives are requested to disclose such Confidential Information, Distributor or its Representatives will give the Purchaser prompt notice of this request prior to the disclosure thereof.


   **IN WITNESS WHEREOF,** the parties have executed this Agreement under seal as of the date first written above.


         Purchaser:


         Lakeland Gear Inc.

By:

         Name: Loran Evans
         Its: President


         Principal:

         Dianne Huntzinger

RIGHTLINE 000025  Exhibit A
                Page 26

## BILL OF SALE

THIS BILL OF SALE, is effective as of the 19 day of August, 2008 by and between **Lakeland Enterprises, LLC,** a South Carolina limited liability company ("SELLER") and **Lakeland Gear Inc.,** a North Carolina limited liability company ("BUYER");

For and in consideration of the sum of Four Hundred Seventy Five and No/100 ($475,000.00) Dollars and the mutual covenants herein contained, the receipt and sufficiency of the foregoing consideration being hereby acknowledged, SELLER hereby transfers, grants, conveys, and assigns to BUYER all of SELLER's right, title, and interest in, to, and under all of those certain assets of SELLER described hereinbelow:

See Schedule 1.1 attached.

SELLER does hereby warrant the Assets to be free and clear of all security interests, liens, and other encumbrances of any type or description.  SELLER does hereby covenant with BUYER that SELLER has good right to sell, transfer, convey, and assign the right, title and interest conveyed herein and will warrant and defend the same in favor of the BUYER, its successors and assigns, against the claims and demands of all persons claiming by, through or under SELLER.  BUYER hereby warrants that the Assets are being purchased and accepted in "As Is" condition.

This Bill of Sale shall be governed, interpreted, construed and enforced in accordance with the laws of the State of South Carolina, without regard to conflict of law principles.

This Bill of Sale shall inure to the benefit of, and be binding upon, the respective heirs, legal representatives, successors and assigns of the parties hereto.

**IN WITNESS WHEREOF,** SELLER and BUYER have caused this Bill of Sale to be executed under seal effective as of the day and year first above written.

**SELLER:**

LAKELAND ENTERPRISES, LLC

By:

Name:    David Schaefer
Its:        President

_Witness_
_Witness_

**BUYER:**

LAKELAND GEAR INC.

By:

Name: Loran Evans
Its: President

_Witness_
_Witness_