1 | BEHROOZ SHARIATI (State Bar No. 174436)
WOMBLE CARLYLE SANDRIDGE & RICE, LLP
2 | 10050 North Wolfe Road, Suite 260
Cupertino, CA 95014
3 | Telephone: (408) 341-3040
Facsimile: (408) 703-5440
4 | Email: bshariati@wcsr.com

5 | JACOB WHARTON (*Admitted Pro Hac Vice*)
WOMBLE CARLYLE SANDRIDGE & RICE, LLP
6 | One West Fourth Street
Winston-Salem, NC 27101
7 | Telephone: (336) 747-6609
Facsimile: (336) 726-6985
8 | Email: jwharton@wcsr.com

9 | Attorneys for Defendants/Counterclaimants/Cross-Defendants
RIGHTLINE GEAR, INC.
10 | CABELA'S INCORPORATED
SPORTMAN'S WAREHOUSE, INC.

11 |

12 | **UNITED STATES DISTRICT COURT**

13 | **SOUTHERN DISTRICT OF CALIFORNIA**

14 |

15 | ENEL COMPANY, LLC; LEE B.
16 | CARGILL,

17 |          Plaintiffs,     Case No.: 3:12–cv–01369-IEG-WMc

18 |     v.

19 | DAVID R. SCHAEFER; LAKELAND     **DEFENDANT RIGHTLINE GEAR,**
20 | ENTERPRISES, INC.; LAKELAND     **INC.'S CONSOLIDATED**
**MEMORANDUM OF POINTS**
21 | GEAR, INC. a/k/a Rightline Gear;     **AUTHORITIES IN SUPPORT OF**
CABELA'S INCORPORATED,     **CROSS-MOTION FOR PARTIAL**
22 | SPORTSMAN'S WAREHOUSE, INC.;     **SUMMARY JUDGMENT AND IN**
**OPPOSITION TO PLAINTIFFS'**
23 | and AMAZON.COM, INC.     **MOTION FOR PARTIAL**
**SUMMARY JUDGMENT**
24 |          Defendants.
Date:   September 16, 2013
25 |                             Time:  10:30 a.m.
26 |                             Courtroom:  4D
Judge:  Hon. Irma E. Gonzalez
27 |

28 |

1  DAVID R. SCHAEFER, an individual,
2  and LAKELAND ENTERPRISES,
   LLC.
3
4              Cross-Claimant,
5  vs.
6
7  LAKELAND GEAR, INC., d/b/a
   RIGHTLINE GEAR, a North Carolina
8  Corporation, and Loran Evans, an
   individual,
9
10             Cross-Defendants.
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# TABLE OF CONTENTS

**Page**

I.   INTRODUCTION ................................................. 1

II.  STATEMENT OF MATERIAL FACTS ............................ 2

III. DISCUSSION ................................................... 2

    A.   Summary Judgment Standard ................................ 2

    B.   The "legal successor-in-interest in privity" Standard Proposed by
        Plaintiffs in Their Motion is Fictitious and Contrary to Precedent........... 14

    C.   Rightline is a "Successor-in-Interest in Privity" ....................... 25

IV.  CONCLUSION ................................................ 26

DEFENDANT RIGHTLINE GEAR, INC.'S CONSOLIDATED MEMORANDUM OF POINTS AND AUTHORITIES
IN SUPPORT OF CROSS-MOTION FOR PARTIAL SUMMARY JUDGMENT AND IN OPPOSITION TO PLAINTIFFS' MOTION
FOR PARTIAL SUMMARY JUDGMENT
Case No. 3:12–cv–01369 IEG (WMc)

# TABLE OF AUTHORITIES

**Cases**

*A.C. Aukerman Co. v. R.L. Chaides Const. Co.,*
  960 F.2d 1020 (Fed. Cir. 1992) ................................................................ *passim*

*ABB Robotics, Inc. v. GMFanuc Robotics Corp.,*
  52 F.3d 1062 (Fed. Cir. 1995) .................................................................... 5

*Adelberg Labs. v. Miles, Inc.,*
  921 F.2d 1267 (Fed. Cir. 1990) ............................................................. 5, 18

*Am. Home Products Corp. v. Lockwood Mfg. Co.,*
  172 USPQ 486 (S.D. Ohio 1972) .............................................................. 18

*Artic Cat, Inc. v. Injection Research Specialists, Inc.,*
  362 F. Supp. 2d 1113 (D. Minn. 2005) ..................................................... 21

*Aspex Eyeware Inc. v. Clariti Eyewear, Inc.,*
  605 F.3d 1305 (Fed. Cir. 2010) .................................................................. 5

*Autoclave Eng'rs, Inc. v. Duriron Co.,*
  190 USPQ 125 (E.D. Pa. 1976) ................................................................ 18

*Avocet Sports Tech. Inc. v. Polar Electro Inc.,*
  2013 WL 1729668 (N.D. Cal. April 16, 2013) ............................... 6, 12, 14

*Bardoon Properties, NV v. Eidolon Corp.,*
  326 S.C. 166, 485 S.E.2d 371 (1997) ................................................. 24, 25

*Brown v. Am. Ry. Express Co.,*
  123 S.E. 97 (1924) ........................................................................ 23, 24, 25

*Celotex Corp. v. Cartrett,*
  477 U.S. 317 (1986) ............................................................................... 2, 3

*Chubb Integrated Sys., Inc. v. Nat'l Bank of Wash.,*
  658 F. Supp. 1043 (D.D.C. 1987) ............................................................... 5

*Eli Lilli & Co. v. Premo Pharma. Labs., Inc.,*
  843 F.2d 1378 (Fed. Cir. 1988) ................................................................ 21

*Five Star Mfg. v. Ramp Lite Mfg., Inc.,*
  44 F. Supp. 2d 1149 (D. Kan. 1999) ......................................................... 14

- ii -

*Gillig v. Nike, Inc.,*
  *602 F.3d 1354 (Fed. Cir. 2010)* ....................................................................... 20, 21

*Hall v. Aqua Queen Manuf., Inc.,*
  *93 F.3d 1548 (Fed.Cir.1996)* .................................................................................. 14

*Hearing Components, Inc. v. Shure, Inc.,*
  *600 F.3d 1357 (Fed. Cir. 2010)* .............................................................................. 6

*Holmberg v. Armbrecht,*
  *327 U.S. 392 (1946)* .................................................................................................. 3

*Horphag Research Ltd. v. Consac Indus., Inc.,*
  *116 F.3d 1450 (Fed. Cir. 1997)* .............................................................................. 22

*Hynix Semiconductor, Inc. v. Rambus, Inc.,*
  *645 F.3d 1336 (Fed. Cir. 2011)* ............................................................................ 4, 7

*Intellectual Property Development, Inc. v. TCI Cablevision of California, Inc.,*
  *248 F.3d 1333 (Fed. Cir. 2001)* .............................................................................. 22

*IXYS Corp. v. Advanced Power Tech., Inc.,*
  *321 F. Supp. 2d 1156 (N.D. Cal. 2004)* .................................................................. 12

*Jamesbury Corp. v. Litton Indus. Prods., Inc.,*
  *839 F.2d 1544 (Fed. Cir. 1988)* ...................................................................... passim

*Jardin v. Datallegro, Inc.,*
  *No. 08-CV-1462, 2011 WL 1311732 (S.D. Cal. April 1, 2011)* ................................ 2

*John C. Flood of Virginia, Inc. v. John C. Flood, Inc.,*
  *700 F. Supp. 2d 90 (D.D.C. 2010)* .......................................................................... 22

*Kloster Speedsteel AB v. Crucible Inc.,*
  *793 F.2d 1565 (Fed. Cir. 1986)* ........................................................................ 21, 22

*Lee's Aquarium & Pet Prods, Inc. v. Python Pet Prods, Inc.,*
  *951 F. Supp. 1469 (S.D. Cal. 1997)* .......................................................................... 3

*LVRC Holdings LLC v. Brekka,*
  *581 F.3d 1127 (9th Cir. 2009)* .................................................................................. 3

*Magna Mirrors of Am. v. 3M Co.,*
  *No. 07-10688, 2013 WL 2940916 (E.D. Mich. June 14, 2013)* ............................ 4, 5

*Mahmood v. Research in Motion Ltd.,*
  *No. 11 Civ. 5345(KBF), 2012 WL 1801693 (S.D.N.Y. 2012)* .................................. 6

- iii -

*Mformation Techs., Inc. v. Research in Motion Ltd.,*
    *830 F. Supp. 2d 815 (N.D. Cal. 2011)* ................................................................ *12*

*Miller v. Glenn Miller Prod., Inc.,*
    *454 F.3d 975 (9th Cir. 2006)* ................................................................. *2, 3*

*Minn. Mining & Mfg. Co. v. Eco Chem, Inc.,*
    *757 F.2d 1256 (Fed. Cir. 1985)* ................................................................ *22*

*Nat'l Football League v. Rondor,*
    *840 F. Supp. 1160 (N.D. Ohio 1993)* ....................................................... *22*

*Petrella v. Metro–Goldwyn–Mayer, Inc.,*
    *695 F.3d 946 (9th Cir. 2012)* ................................................................ *14*

*Radar Indust., Inc. v. Cleveland Die & Mfg. Co.,*
    *632 F. Supp. 2d 686 (E.D. Mich. 2009)* .................................................. *14*

*Radio Sys. Corp. v. Lalor,*
    *No. C10-828-RSL, 2012 WL 254026 (W.D. Wash. Jan. 26, 2012)* .................. *19, 20*

*Serdarevic v. Advanced Med. Optics, Inc.,*
    *532 F.3d 1352* .......................................................................... *12*

*Simmons v. Mark Lift Indust., Inc.,*
    *622 S.E.2d 213 (2005)* ...................................................................... *24, 25*

*St. Clair Intellectual Property Consultants, Inc. v. Acer, Inc.,*
    *2013 WL 3367319 (D. Del. July 2, 2013)* ................................................ *13*

*Stryker Corp. v. Zimmer, Inc., 741 F. Supp. 509 (D.N.J. 1990)* ......................... *5*

*Symantec Corp. v. Computer Assocs., Int'l, Inc.,*
    *522 F.3d 1279 (Fed. Cir. 2008)* ............................................................ *12*

*Tahoe-Sierra Preservation Council, Inc. v. Tahoe Regional Planning Agency,*
    *322 F.3d 1064 (9th Cir. 2003)* .............................................................. *25*

*Ultimax Cement Mfg. Corp. v. CTS Cement Mfg. Corp.,*
    *856 F. Supp. 2d 1136 (C.D. Cal. 2012)* ................................................... *15*

*Wafer Shave, Inc. v. Gillette Co.,*
    *857 F. Supp. 112 (D. Mass 1993)* ........................................................... *12*

*Wanlass v. General Electric,*
    *148 F.3d 1334 (Fed. Cir. 1998)* ............................................................ *4, 12, 13*

**Statutes**

- iv -

*28 U.S.C. §1927*................................................................................................... 23

*35 U.S.C. §§41*.................................................................................................... 22

*35 U.S.C. §252*.................................................................................................... 22

*35 U.S.C. §41*...................................................................................................... 22

**Rules**

*CivLR 7.1.f.1.*...................................................................................................... 2

*FED. R. CIV. P. 56*................................................................................................. 2

DEFENDANT RIGHTLINE GEAR, INC.'S CONSOLIDATED MEMORANDUM OF POINTS AND AUTHORITIES
IN SUPPORT OF CROSS-MOTION FOR PARTIAL SUMMARY JUDGMENT AND IN OPPOSITION TO PLAINTIFFS' MOTION
FOR PARTIAL SUMMARY JUDGMENT
Case No. 3:12–cv–01369 IEG (WMc)

# I.   INTRODUCTION

Plaintiffs' Motion attempts to create from whole cloth a hard-and-fast rule that limits the availability of the equitable defenses of laches and estoppel to a "legal successor-in-interest in privity" under one of two narrow factual scenarios. No court has ever imposed this rigid and narrow approach to the application of any *equitable* defenses, including equitable estoppel and laches. To the contrary, when applying laches or estoppel, courts have given little or no weight to the form of corporate transactions in favor of a flexible, equitable approach.

Even under the standard imagined by plaintiffs, defendant Rightline Gear, Inc. f/k/a Lakeland Gear, Inc. ("Rightline") qualifies as a "legal successor-in-interest in privity" with codefendants David R. Schaefer and Lakeland Gear, Inc. ("Lakeland") and can assert and rely upon the estoppel defense that also belongs to Lakeland and Mr. Schaefer.

Lastly, even if Rightline could not rely on the equitable defenses available to Mr. Schaefer and Lakeland, plaintiffs' delay in bringing suit against Rightline itself operates as a complete bar to plaintiffs' infringement claim. Even without counting the delay against Mr. Schaefer and Lakeland, Plaintiffs delayed in bringing suit after Rightline bought the business in 2008,without an acceptable excuse for the delay. During this time Rightline invested heavily in the development, marketing, and sales of the allegedly infringing product. Rightline did so with the reasonable belief that there was never any threat of litigation from plaintiffs and relied on plaintiffs' inaction to develop and expand its truck tent business. Accordingly, Rightline succeeds on its own estoppel and laches defenses regardless of whether Rightline can dovetail with Lakeland and Mr. Schaefer's defenses of estoppel and laches.

The law and facts here support the Court granting Rightline's cross-motion for summary judgment on the equitable defenses of estoppel and laches and denying plaintiffs' motion for partial summary judgment on the same. Granting Rightline's cross-

motion disposes of plaintiffs' case against Rightline and its vendors, including codefendants Cabela's Incorporated, Sportsman's Warehouse, Inc., and Amazon.com, Inc.[1]

## II.   STATEMENT OF MATERIAL FACTS

Rightline files an accompanying statement of material facts under CivLR 7.1.f.1. and incorporates the facts by reference herein in their entirety. References to the statement of material facts are denoted as "SoF, ¶__."

## III.   DISCUSSION

### A.   Summary Judgment Standard

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a); *Celotex Corp. v. Cartrett*, 477 U.S. 317, 322-23 (1986). "A genuine issue of material fact exists if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party." *Jardin v. Datallegro*, *Inc.*, No. 08-CV-1462, 2011 WL 1311732, at *2 (S.D. Cal. April 1, 2011)(citing *Miller v. Glenn Miller Prod., Inc.*, 454 F.3d 975, 987 (9th Cir. 2006)). Where, as here, the moving party would bear the burden of proof on the affirmative defenses of estoppel and laches at trial, the "moving party has the initial burden of establishing the absence of a genuine issue of fact on each issue material to its case." *Miller*, 454 F.3d at 987 (citation and internal quotations omitted).

After the moving party makes that showing, the burden shifts to the nonmoving party to provide "evidence that is significantly probative or more than 'merely colorable' that a genuine issue of material fact exists for trial." *Jardin*, 2011 WL 1311732, at *2

---

[1] The remaining claims would be Mr. Schaefer and Lakeland's cross-claims against Rightline and Loran Evans, which is subject to a motion to dismiss, *see* ECF Nos. 88, 88-1, and the defendants counterclaims against plaintiffs, including requests for attorneys' fees and costs.

(quoting *LVRC Holdings LLC v. Brekka*, 581 F.3d 1127, 1137 (9th Cir. 2009)(citations omitted)). Rather than merely point to the allegations and denials in its pleadings, the non-moving party must oppose a summary judgment motion with specific facts showing that there is a genuine issue for trial. *Id.* (citing *Celotex*, 477 U.S. at 325). While the court must draw all reasonable inferences in the nonmoving party's favor, the nonmoving party must come forward with more than "the mere existence of a scintilla of evidence," and that evidence must be admissible. *Miller*, 454 F.3d at 988 (citation omitted). "[W]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." *Id.* (citation omitted). In cases involving equitable defenses, "[a] federal court may dismiss a suit where the plaintiffs' 'lack of diligence is wholly unexcused; and both the nature of the claim and the situation of the parties was such as to call for diligence." *A.C. Aukerman Co. v. R.L. Chaides Const. Co.*, 960 F.2d 1020, 1031-32 (Fed. Cir. 1992) (en banc)(citing *Holmberg v. Armbrecht*, 327 U.S. 392 (1946))(internal citation omitted).

Here, there are no factual issues that preclude summary judgment and plaintiffs' have already conceded this is a matter of law for the Court. *See* Pls.' Mem. at 3, n.1 ("[T]he present dispute as to Rightline Gear concerns a legal interpretation of a written contract.").

## A.    Rightline is Entitled to Summary Judgment on its Affirmative Defenses of Equitable Estoppel and Laches.

### 1.    The Legal Standard for Equitable Estoppel

"Equitable estoppel as a bar to a claim of patent infringement can be determined on summary judgment." *Lee's Aquarium & Pet Prods, Inc. v. Python Pet Prods, Inc.*, 951 F. Supp. 1469, 1483 (S.D. Cal. 1997)(citing *Aukerman*, 960 F.2d at 1041, 1043)). "Under the equitable estoppel doctrine, an alleged infringer must establish three elements to bar a patentee's claim for patent infringement: (1) a patentee's misleading conduct causing the alleged infringer to reasonably infer that the patentee does not

intend to enforce its patent; (2) the alleged infringer's reliance on that conduct; and (3) due to that reliance, the alleged infringer will be materially prejudiced if the patentee is allowed to proceed with the infringement claim. *Aukerman*, 960 F.2d at 1028. "[E]quitable estoppel is not limited to a particular factual situation nor subject to resolution by simple or hard and fast rules." *Id.* at 1041.

### a)   Misleading Conduct

Under the first factor, misleading "[c]onduct may include specific statements, action, inaction, or silence when there was an obligation to speak." *Hynix Semiconductor, Inc. v. Rambus, Inc.*, 645 F.3d 1336, 1348 (Fed. Cir. 2011) (citation omitted). "Estoppel requires representations or conduct by the patentee from which the alleged infringer could reasonably infer that the patentee had abandoned his claim." *Jamesbury Corp. v. Litton Indus. Prods., Inc.*, 839 F.2d 1544 (Fed. Cir. 1988), *overruled on other grounds, A.C. Auckerman Co. v. R.L. Chaides Constr. Co.*, 960 F.2d 1020, 1038-39 (Fed. Cir. 1992).

In addition, the patentee must usually have knowledge of the alleged infringing activity before it engages in the misleading conduct. *See Aukerman*, 960 F.2d at 1041. "Either actual or constructive knowledge of the infringing activity (even without knowledge that the activity is infringement) is sufficient to put a patentee on notice." *Magna Mirrors of Am. v. 3M Co.*, No. 07-10688, 2013 WL 2940916, at *5 (E.D. Mich. June 14, 2013)(citation omitted). While constructive notice requires that the infringer's activities be "pervasive, open, and notorious," a patentee still has a duty to investigate similar products for infringement. *Id.* at *5-8 (citing *Wanless v. General Electric*, 148 F.3d 1334, 1337-38 (Fed. Cir. 1998) ("sales, marketing, publication, or public use of a product similar to or embodying technology similar to the patented invention, or published descriptions of the defendant's potentially infringing activities, give rise to a duty to investigate whether there is infringement.")).

### b)   Reliance

Unlike laches, the reliance element of estoppel obliges the accused infringer to show that it relied on the misleading conduct of the patentee in connection with taking some action. *Aukerman*, 970 F.2d at 1042-3. A party need not "prove precisely what alternative path it would have taken, or that every . . . decision was based on reliance on [the patentee's] silence." *Aspex Eyeware Inc. v. Clariti Eyewear, Inc.*, 605 F.3d 1305, 1312 (Fed. Cir. 2010). Rather, reliance can occur merely because the alleged infringer continues to sell and invest in its products. *Magna*, 2013 WL 2940916 at *10 (citing *Stryker Corp. v. Zimmer, Inc.*, 741 F. Supp. 509, 514 (D.N.J. 1990)).

### c)      Prejudice

The third factor requires the alleged infringer to prove that it would be "materially prejudiced" – whether through a change in economic position or loss of evidence – if the court allows the patentee to proceed with its infringement contentions. *Aukerman*, 960 F.2d at 1043. "Evidentiary, or 'defense' prejudice, may arise by reason of a defendant's inability to present a full and fair defense on the merits due to the loss of records, the death of a witness, or the unreliability of memories of long past events, thereby undermining the court's ability to judge the facts." *Aukerman,* 960 F.2d at 1032. An alleged infringer may show economic prejudice through a change in economic position – such as an investment – based on the plaintiff's actions or inaction. *See Aspex Eyeware, Inc.*, 605 F.3d at 1312-13 (stating that "[p]rejudice may be shown by a change in economic position flowing from actions taken or not taken by the patentee."); *Chubb Integrated Sys., Inc. v. Nat'l Bank of Wash.*, 658 F. Supp. 1043, 1049 (D.D.C. 1987)(holding that a significant business investment constituted prejudice); *Adelberg Labs. v. Miles, Inc.*, 921 F.2d 1267, 1272 (Fed. Cir. 1990)(making capital investment and increasing production constitutes prejudice). Economic prejudice exists when the accused infringer has expanded its business, failed to seek a license agreement, or refrained from taking some legal action against the patentee. *See, e.g., ABB Robotics, Inc. v. GMFanuc Robotics Corp.*, 52 F.3d 1062, 1065 (Fed. Cir. 1995)(finding prejudice

- 5 -

where accused infringer made expenditures on patents and technology development, threefold expansion of accused infringing activity, and failure to take a license); *Mahmood v. Research in Motion Ltd.*, No. 11 Civ. 5345(KBF), 2012 WL 1801693, at *7 (S.D.N.Y. 2012)(finding prejudice where accused infringer could have pursued a license, did not pursue legal action against the plaintiffs during the limitations period, and did not seek to produce a non-infringing design-around product).

### 2.        The Legal Standard for Laches

An accused infringer may raise a laches defense when the plaintiff has "acted with 'neglect or delay in bringing suit to remedy an alleged wrong, which taken together with lapse of time and other circumstances, causes prejudice to the adverse party and operates as an equitable bar.'" *Avocet Sports Tech. Inc. v. Polar Electro Inc.*, 2013 WL 1729668, at *2 (N.D. Cal. April 16, 2013)(quoting *Aukerman*, 960 F.2d at 1029-30). To establish a laches claim in the patent context, the accused infringer must establish that "(a) the patentee's delay in bringing suit was unreasonable and inexcusable, and (b) the alleged infringer suffered material prejudice attributable to the delay." *Aukerman*, 960 F.2d at 1028; *see also Hearing Components, Inc. v. Shure, Inc.*, 600 F.3d 1357, 1375 (Fed. Cir. 2010). Unlike estoppel, the alleged infringer need not be aware of the patentee or its patent. *Auckerman*, 960 F.2d at 1042. Also unlike estoppel, laches does not require a showing of reliance on any misleading conduct. *Id.* "In patent infringement actions, laches bars recovery of damages plaintiff might have suffered before initiating litigation, but does not bar prospective relief." *Avocet*, 2013 WL 1729668, at * 2 (citing *Aukerman*, 960 F.2d at 1040).

### 3.        Summary Judgment is Appropriate for Rightline on both the Defenses of Estoppel and Laches

To prevail on summary judgment on both defenses, Rightline must satisfy the three elements of estoppel, one of which – prejudice – overlaps with laches, and establish unreasonable delay for laches.

- 6 -

### a)   Misleading Conduct

On July 31, 2003 Mr. Cargill's patent attorney, John Rogitz, sent a licensing demand letter to defendants Mr. Schaefer and Lakeland introducing Mr. Cargill as the named inventor of the '784 Patent, and requesting discussions regarding a license to the patent. SoF, ¶23; **Exs. 12-15**. Notwithstanding this letter purporting to convey Mr. Cargill's intention, Mr. Cargill had very little interest in granting a license to Lakeland. SoF, ¶24; **Ex. 3** (stating two times that "Cargill had very little interest in granting any license to Schaefer" in direct contradiction to the 2003 letter).

Lakeland responded in an undated letter denying infringement and declining the offer to engage in licensing discussions. SoF, ¶25; **Exs. 16**. On August 18, 2003, Mr. Rogitz sent a follow-up letter on behalf of "Enel Co." to Lakeland renewing its claims of patent infringement, and demanding that any sales of the CampRight tents cease. SoF, ¶26; **Exs. 12, 14,** and **17**. On October 22, 2003, an attorney for Lakeland responded identifying specific distinctions between the truck tent claimed in the '784 Patent and the allegedly infringing CampRight tents sold by Lakeland, and requesting observations and comments directed to specific elements raised in the letter. SoF, ¶27; **Exs. 12, 19, 20**. Neither plaintiffs nor their attorney ever responded to the October 22, 2003 letter. SoF, ¶28. Defendants did not hear anything from plaintiffs until shortly after suit was filed in June 2012. This initial action, followed by a long period of silence, is classic misleading conduct. *Hynix*, 645 F.3d at 1348 ("action, inaction, or silence" can constitute misleading conduct when there is an obligation to speak).

### b)   Defendants Relied Upon Plaintiffs' Delay in Filing Suit, Resulting in Substantial Prejudice to Defendants

Lakeland, Mr. Schaefer, and Rightline have all been prejudiced by plaintiffs' delay. Plaintiffs' inaction following its 2003 allegations of infringement encouraged Lakeland and Schaefer's manufacturing, marketing and selling of a truck-mounted tent product, the Camp-Right truck tent, that plaintiffs asserted was an infringing article in

2003. SoF, ¶38, **Ex. 12**. Lakeland and Mr. Schaefer relied on plaintiffs' failure to respond to the Oct. 22, 2003 letter followed by many years of inaction as a tacit acknowledgement, waiver, acquiescence and confirmation that Lakeland and Schaefer were not infringing any patent claim of plaintiffs. *Id.* at ¶39. Lakeland and Mr. Schaefer continued to make Camp-Right truck tent sales under the reasonable belief, after consulting and review with a second patent attorney, that the Camp-Right truck tent did not infringe the '784 Patent, and that the sales were not objected to by plaintiffs. *Id.* at ¶40, **Ex. 15**. Lakeland and Mr. Schaefer undertook no additional investigation of the '784 Patent after Mr. Rogitz failed to respond to Lakeland and Schaefer's specific objections to the patent infringement claims. SoF, ¶41.

In August 2008, Mr. Schaefer sold the "tent and camping accessory business of Lakeland" to Rightline as part of the sale of the Lakeland's business interests to Rightline. SoF, ¶42, **Ex. 25**. Lakeland and Mr. Schaefer sold the business to Rightline for value under the belief that no infringement issues persisted. SoF, ¶43, **Ex. 15**.

Plaintiffs' enforcement delay has resulted in Lakeland and Mr. Schaefer not retaining much of the documentation from 2003, including but not limited to contemporaneous notes, sketches, financial documents, invoices, bank transaction information, costs of goods sold and expense information. SoF, ¶44. Moreover, event recollection and the availability of knowledgeable witnesses have both diminished with the passing of time. SoF, ¶¶44-45.

Rightline has been prejudiced in many ways. Rightline purchased the business from Lakeland and Schaefer with the understanding and belief that there were no threatened claims of infringement, and paid Lakeland and Mr. Schaefer a significant value reflecting the fact that the business was not the subject of any threat or proceedings. SoF, ¶54. The "Agreement Ancillary to Sale of Business Assets" states that Rightline "will carry on the business operations and activities of [Lakeland] in substantially the same manner as such business was conducted by [Lakeland] prior to the

- 8 -

acquisition." SoF, ¶55. That same ancillary agreement prohibited Lakeland from competing with Rightline for five years in the field of truck tents and other camping equipment. SoF, ¶56. Mr. Schaefer stayed on to train and assist Rightline for an entire month after closing, and Schaefer was obligated to be available for consultation up to a year after closing. SoF, ¶57. Rightline also acquired all of Lakeland's websites and domain names associated with the sale of truck tents and other products. SoF, ¶58; **Ex. 25** at RIGHTLINE 000015 (see Schedule 1.1C).

At the time Rightline (then known as Lakeland Gear, Inc.) purchased the business from Lakeland, Lakeland did not have manufacturing facilities, real property related to the business lines purchased, leases, or any substantial assets other than what was conveyed in the purchase. SoF, ¶59. Mr. Schaefer was running the business out of his garage and using manufacturers in Asia. *Id.*

Lakeland Enterprises sold only its non-real property assets so that Mr. Schaefer could maintain the corporate entity to pursue other potential business interest unrelated to the tent and car-top carrier market, from which he was excluded by a non-compete agreement with Rightline. SoF, ¶60.

Rightline, through Loran Evans, first become aware of the Enel truck tents during the time period he was investigating purchasing the LakelandGear.com business from David Schaefer in July 2008. SoF, ¶60.  Mr. Schaefer mentioned that there were only two companies other than Lakeland producing truck tents at that time, Napier Enterprises and Enel. SoF, ¶62. However, Mr. Schaefer did not reveal to Rightline the 2003 communications between Lakeland and Enel. *Id.* Rightline did, however, learn from Mr. Schaefer in 2008 that Mr. Schaefer learned about plaintiffs' '784 Patent very early in the launch of his truck tent and that he redesigned the tent to avoid infringement. *Id.*

Mr. Evans studied the '784 Patent during his due diligence investigation in July

and August 2008 and based on his study of the patent and the representations made by Mr. Schaefer and Lakeland, including those in the agreement whereby Rightline acquired Lakeland's business, concluded there were no threats of infringement. SoF, ¶63. Rightline would not have purchased the business from Lakeland and Mr. Schaefer had it known there was a threat of an infringement claim from plaintiffs regarding the '784 Patent or, at the least, engaged in additional due diligence before purchasing the business, up to and including contacting plaintiffs to determine if there remained any threat of an infringement action. SoF, ¶64.

After purchasing the business, Rightline invested heavily in the Rightline business and tent truck product line, expanding such business with the understanding that there was no threat of infringement claims from plaintiffs concerning the '784 Patent. SoF, ¶65.   In particular, Rightline invested over $320,000 in the overall Rightline business, which includes products other than truck tents, since 2008. *Id.* at ¶66. Rightline invested approximately over $20,000 in the truck tent product line since 2008 on travel, product design, and shipping, all with the intent to sell the products to a wider market, which subsequently occurred. *Id.* at ¶67. Specifically, Rightline increased its vendors from two in 2008 to 32 vendors through June 6, 2012 (the filing date of this action). SoF, ¶68, **Ex. 28**.

By increasing vendors, Rightline expanded the market for the accused truck tent resulting in increased sales from 2008 to the present. SoF, ¶69. Rightline's expansion of the truck tent product line has increased its potential exposure to liability. If plaintiffs had contacted Rightline earlier, it would have had the opportunity to take a license, develop alternative truck tent designs, or both if plaintiffs had notified Rightline of the alleged infringement or simply filed suit earlier. SoF, ¶70.

In the past, when Rightline was confronted with an allegation of patent infringement, it took steps to design around the patent at issue and consulted a patent attorney about the issue. *Id.* at ¶71. In one instance, Rightline was approached by Napier

in 2010 with allegations that a Rightline SUV tent infringed a Napier design patent. *Id.* at ¶72. In response, Rightline redesigned the SUV tent in question. *Id.* at ¶73.

While reviewing a Napier patent in 2009, Rightline sought advice on plaintiffs' '784 Patent at the same time. *Id.* at ¶74; *see also* **Ex. 26**. Rightline sought legal advice in 2009 regarding plaintiffs' '784 Patent to make sure there were no infringement issues after learning of the '784 Patent when Rightline purchased the business from Lakeland and Mr. Schaefer. *Id.* at ¶75. As part of those communications with counsel, Rightline received legal advice in 2009 indicating that Rightline's truck tent did not infringe any claim of the '784 Patent. *Id.* at ¶76; see also **Ex. 26**.

Had plaintiffs confronted Rightline in 2008 or soon thereafter with allegations of infringement, Rightline would have engaged an attorney, such as patent attorney Stephen Chapman, to at least convey the noninfringement positions set forth in Mr. Chapman's 2009 correspondence to Rightline. *Id.* at ¶77. But plaintiffs never contacted Rightline until filing this action. Accordingly, Rightline reasonably assumed that Enel or Mr. Cargill was not considering or intending to pursue any infringement action based on the fact that Rightline had not heard from Enel or Mr. Cargill.

Rightline's ability to defend this suit is prejudiced by the delay because Rightline has not had any reason to retain all documents from 2008 and shortly thereafter. *Id.* at ¶79. Further, plaintiffs' suit sparked conflict between Lakeland and Rightline over indemnification and has led to further ancillary costs for all defendants. *Id.* at ¶80; *see also* **Ex. 15**.

### c)   Plaintiffs' Delay in Filing Suit is Unreasonable and Inexcusable

"The delay is measured from the time the plaintiff knew or reasonably should have known of the defendant's alleged infringing activities to the date of the suit." *Aukerman*, 960 F.2d at 1032. "When evaluating a defendant's laches defense, a court must consider the particular facts and circumstances of the case at hand and 'weigh the

equities of the parties.'" *Avocet*, 2013 WL 1729668, at *3 (quoting *Aukerman*, 960 F.2d at 1032). "The length of time which may be deemed unreasonable has no fixed boundaries but rather depends on the circumstances." *Aukerman*, 960 F.2d at 1032 (citations omitted). Generally, courts have found delays of more than four years unreasonable. *See Mformation Techs., Inc. v. Research in Motion Ltd.*, 830 F. Supp. 2d 815, 824 (N.D. Cal. 2011)(granting summary judgment on laches)(citing *IXYS Corp. v. Advanced Power Tech., Inc.*, 321 F. Supp. 2d 1156, 1163 (N.D. Cal. 2004); *cf. Wafer Shave, Inc. v. Gillette Co.,* 857 F. Supp. 112, 121 (D. Mass 1993)(finding estoppel in a case with a three-year-and-five-month delay). Delays of three to four years are unreasonable when "accompanied by extraneous improper tactics or misleading conduct by the plaintiff." *Id.* Misleading conduct can include "lulling the defendant into believing that the threat [of infringement] had been abandoned." *Mformation Techs.*, 321 F. Supp. 2d at 825 (citing *Wafer Shave*, 857 F. Supp. at 128-29).

Although there are no hard and fast rules for determining an unreasonable delay, a laches presumption exists when the patentee delays filing suit for more than six years. *Aukerman*, 960 F.2d at 1035-36 (citations omitted). The delay period continues if prior products are identical or similar to the alleged infringing products. *Symantec Corp. v. Computer Assocs., Int'l, Inc.*, 522 F.3d 1279, 1295 (Fed. Cir. 2008). Once established, the plaintiff may rebut this presumption with evidence showing "an excuse for the delay or that the delay was reasonable" or offering evidence "sufficient to place the matters of [evidentiary] prejudice and economic prejudice genuinely in issue." *Serdarevic v. Advanced Med. Optics, Inc.*, 532 F.3d 1352, 1359-60 (citation omitted). Here, there is more than a combined six-year delay and plaintiffs have no acceptable excuses.

As discussed above, a plaintiff's knowledge of infringing activity can be actual or constructive, and a plaintiff has a duty to monitor and investigate developments in the field of the accused products. *See Wanlass*, 148 F.3d at 1338-39. "The law is well settled that where the question of laches is in issue the plaintiff is chargeable with such

knowledge as he might have obtained upon inquiry, provided the facts already known by him were such as to put upon a man of ordinary intelligence the duty of inquiry." *St. Clair Intellectual Property Consultants, Inc. v. Acer, Inc.*, 2013 WL 3367319, at *2 (D. Del. July 2, 2013) (quoting *Wanlass*, 149 F.3d at 1338). A patentee who neglects to monitor the field of its invention cannot plead ignorance in order to dodge the laches defense:

> Open and notorious potentially infringing conduct gives patentees the opportunity to recover damages based on their exclusive rights. Therefore, a reasonable patentee, motivated by his interest in recovering for and preventing infringement, keeps abreast of the activities of those in his field of endeavor. Allocating the burden to patentees to seek out infringers is proper, furthermore, because compared to potential infringers, they are in the best position to know the scope of their patent protection and, therefore, also to know likely places to find infringement.  This superior knowledge generally allows them to incur comparatively lower costs in investigating potentially infringing activities than competitors would incur conducting patent searches on every aspect of their products and notifying the patentee of their results.

*Wanlass*, 148 F.3d at 1339. Minor tweaks or changes that are immaterial to a plaintiff's infringement contentions do not relieve the plaintiff of its duty to examine or monitor potentially infringing activities. *See St. Clair*, 2013 WL 3367319, at *3-4. Here, both Lakeland and Rightline sold openly and conspicuously (SoF, ¶¶81-86) and plaintiffs had the ability and past experience to monitor the market for truck tents and investigate potential competitors and the features of their products. *See* SoF, ¶¶1-19. Plaintiffs had this ability ***and duty*** from 2003 through the time of filing suit in this action on June 6, 2012.

Plaintiffs have offered only one excuse for not filing suit sooner – poverty. Plaintiffs contend that litigation costs were prohibitive because Enel's "net profit in truck tents, since product inception, was no profit at all, but a loss" and because of the

- 13 -

cost of litigation and Lakeland's purported inability to satisfy a judgment. SoF, ¶¶29, 30; **Ex. 2**. However, the Federal Circuit has expressly rejected this excuse. *See Avocet*, 2013 WL 1729668, at *3; *see also Hall v. Aqua Queen Manuf., Inc.*, 93 F.3d 1548, 1554 (Fed.Cir.1996)("The Supreme Court made clear long ago that poverty, by itself, is never an excuse for laches purposes. *Aukerman* is not-indeed, cannot be-to the contrary.")(internal citation omitted, emphasis in original); *cf. Petrella v. Metro–Goldwyn–Mayer, Inc.*, 695 F.3d 946, 953 (9th Cir. 2012) (in copyright infringement case, lack of funds to pay for litigation does not excuse delay). Plaintiff's lack of funds, and defendants' alleged inability to satisfy a judgment, does not excuse its delay. Moreover, plaintiffs could not lie in wait for defendants to increase sales to a point where a judgment could be satisfied. *Aukerman*, 960 F.2d at 1033 ("The courts must look for a *change* in the economic position of the alleged infringer during the period of delay. [ ] On the other hand, this does not mean that a patentee may intentionally lie silently in wait watching damages escalate, [ ], particularly where an infringer, if he had notice, could have switched to a noninfringing product.")(citations omitted)(emphasis in original).

### d)      Rightline is Entitled to the Laches Presumption

An accused infringer may tack on the time of a preceding party when there is "'some formal transfer of the technology and goodwill of the accused product.'" *Radar Indust., Inc. v. Cleveland Die & Mfg. Co.*, 632 F. Supp. 2d 686, 692 (E.D. Mich. 2009) (*quoting Five Star Mfg. v. Ramp Lite Mfg., Inc.*, 44 F. Supp. 2d 1149, 1156 (D. Kan. 1999)). As already established, Rightline acquired the technology and goodwill in the truck tent line of business from Lakeland. Accordingly, Rightline may tack on the time of Mr. Schaefer and Lakeland and there arises a presumption of laches in this case.

### B.      The "legal successor-in-interest in privity" Standard Proposed by Plaintiffs in Their Motion is Fictitious and Contrary to Precedent

In their motion, Plaintiffs attempt to deny equitable relief to all but "legal

- 14 -

successor-in-interest in privity" relies on a law that does not exist, and indeed imposing the type of "hard and fast rule" proposed by Plaintiffs is contrary to Federal Circuit precedent.[2] Plaintiffs contend that Rightline is entitled to assert and rely on Lakeland's equitable defenses if and only if: (1) Rightline purchased "the entirety" of Lakeland; or (2) Rightline exerts "financial control" over Lakeland. Plaintiffs' Motion for Partial Summary Judgment and Memorandum ("Plaintiffs' Memorandum" or "Pls.' Mem.")(ECF No. 85-1). at 4-5. However, the Federal Circuit eschews this type of line drawing. *See Aukerman*, 960 F.2d at 1041 ("equitable estoppel is not limited to a particular factual situation nor subject to resolution by simple or hard and fast rules."); *see also Ultimax Cement Mfg. Corp. v. CTS Cement Mfg. Corp.*, 856 F. Supp. 2d 1136, 1151 (C.D. Cal. 2012)("With its origins in equity, a determination of laches is not made upon the application of 'mechanical rules. [ ] Like laches, equitable estoppel is not limited to a particular factual situation nor subject to resolution by simple or hard and fast rules.")(citing *Aukerman*, 960 F.2d at 1032, 1041)(internal citation omitted). Plaintiffs' attempt to squeeze the equitable defenses of estoppel and laches into an inelastic examination of the Rightline–Lakeland business transaction is at odds with the governing law.

### 1.   Plaintiffs' Analysis Blends the Standards for Equitable Estoppel and Laches

The initial shortcoming of Plaintiffs' argument in their motion is that it improperly relies on *Auckerman* for the proposition that all equitable defenses "are personal to the

---

[2] The fictional nature of plaintiffs' rule is demonstrated by the fact that plaintiffs are on record in this matter stating that the label on the analysis – be it "legal successor" or "privity" "does not matter." *See* Plaintiffs' Reply to Memorandum of Points and Authorities in Opposition to Plaintiffs' Motion for Partial Judgment on the Pleadings (ECF No. 77) at 3. Throughout that reply plaintiffs never suggest a rule that requires a defendant to be a "successor-in-interest in privity."

party asserting them." Pls.' Mem., at p. 4. What *Auckerman actually* holds is that "[t]he defense [laches], is personal to the particular party and equitable in nature, [and] must have flexibility in its application." 960 F.2d at 1032 (brackets added). *Aukerman* does not hold that ***estoppel*** is personal to the party asserting it.[3] Plaintiffs' overreaching statement that ***all*** equitable defenses are "personal" in nature finds no support in *Aukerman,* and they have not cited any other case to support it, nor can they, because the case law supports the availability of equitable estoppel to various types of successors, as discussed below and is not a "personal" defense.

### 2.     The Equitable Nature of the Estoppel Defense Precludes the Application of Strict Privity Requirements for Successors

The cases cited by plaintiffs in their motion do not support a strict "successor-in-interest in privity" standard for equitable estoppel and laches. In *Jamesbury*, the district court reviewed documentary and testimonial evidence (some of which had been generated after a jury trial on the merits) and held on summary judgment that patentee's claims were barred by laches and estoppel. Patentee appealed. The Federal Circuit affirmed. *Jamesbury*, 839 F.2d at 1554.

First, plaintiffs admit that *Jamesbury* does not even mention the doctrine of privity, *see* Pls.' Mem. at 4. Instead, *Jamesbury* holds that a successor that is charged with the knowledge of potential infringement known to its predecessor may rely on a patentee's lack of communications to the predecessor ***and*** to itself. *See Jamesbury*, 839 F.2d at 1555.

---

[3] In a laches analysis, a court may examine a transaction between corporations to determine whether a successor may "tack" on the time of delay of the predecessor for the limited purpose of deciding whether a presumption of prejudice arises.  This only concerns only the presumption. Rightline addressed this concept in Section 2(b)(3)(D), *supra*.

Second, the issues presented in *Jamesbury* at both the district court and Federal Circuit did hinge upon the nature of the corporate transaction between predecessor and successor. The appellate *Jamesbury* opinion identifies the original entity, Contromatics, as a "predecessor-in-interest" and Litton as a "successor" without delving into the details of the underlying transactions. *Jamesbury*, 839 F.2d at 1546, 1555. The court notes that "Contromatics Corp. began operations in 1961. UTD Corp. purchased Contromatics in 1967. Litton Industries, Inc., then purchased UTD Corp. in 1968." *Jamesbury*, 839 F.2d at 1546 n.2. In granting summary judgment of estoppel and laches, the district court found that the predecessor "sold the company" to the successor. *Jamesbury Corp. v. Litton Indus. Products, Inc.*, 646 F. Supp. 1495, 1500 (D. Conn. 1986). The district court summarized its reasoning, noting that equity dictates when a business continues "with little change," it should be allowed to step into the shoes of its predecessor:

> Plaintiff claims that defendant cannot satisfy this element because Litton was not aware of the 1967 communications between plaintiff and Contromatics when Litton acquired Contromatics. Plaintiff's argument is inherently inconsistent. If Litton is not deemed privy to the 1967-68 meeting and correspondence between Jamesbury and Contromatics then it is clear that Litton was never notified of the possible patent infringement over the course of nine years. Under such circumstances, both the laches and equitable estoppel defenses would prevent plaintiff from now trying to reap the profits of defendant's established business as the successor in interest to Contromatics. The better argument is that Litton stepped into the shoes of Contromatics and is liable for any knowledge that may be imputed to that firm, but also is entitled to rely on the absence of communication both to Contromatics and to it, especially in view of the fact that apparently Contromatics, along with its employees, was actually subsumed into Litton with little change other than the name on its business cards.

*Jamesbury*, 646 F. Supp. 1495, 1501 n.3.

The Federal Circuit agreed. *Jamesbury*, 839 F.2d at 1555 ("The district court

properly held Litton liable for the knowledge of Contromatics of the allegation of infringement because Litton was the successor in interest to Contromatics. ***The corollary to that holding is that Litton is entitled to rely on the lack of communication to Contromatics, as well as to itself, following the letter.***") (emphasis added). The district and appellate court did not base their opinion on whether the successor exerted financial control over the predecessor or whether transactions among predecessors and successors were "complete" purchases, stock purchases, asset purchases, or some other form of transaction.

To the contrary, the Federal Circuit noted that "[f]rom an infringement, laches, discretion, or good conscience point of view, the insertion of 'corporate entity' into this controversy is not in the ends of justice." *Jamesbury*, 839 F.2d at 1555 n.49 (citing *Am. Home Products Corp. v. Lockwood Mfg. Co.*, 172 USPQ 486, 498 (S.D. Ohio 1972), *aff'd*, 483 F.2d 1120, 179 USPQ 196 (6th Cir. 1973) and *Autoclave Eng'rs, Inc. v. Duriron Co.*, 190 USPQ 125 (E.D. Pa. 1976)). If, as plaintiffs here claim in their motion, the nature of the transaction were crucial to the availability of equitable defenses, one would expect the courts to examine the transactions closely as there was not one, but two separate transfers from predecessor to successor in Litton. But neither the district court, nor the Federal Circuit gave the specific form of the transaction any weight, and nor should this Court. *See also, Adelberg Labs.*, 921 F.2d at 1274 (affirming summary judgment for defendant on laches and estoppel when claim of infringement was communicated to defendant's predecessor, defendant referred to as "successor-in-interest" but Federal Circuit did not analyze or even discuss the transaction between defendants and its predecessor).

Here, plaintiffs charge Rightline with knowledge of the '784 Patent and plaintiffs' claims of infringement made to Lakeland and Mr. Schaefer. *See* **Ex. 27**, Compl., ¶27 ("Upon information and belief, [Rightline] acquired the CampRight tent business from Defendants Schaefer and Lakeland Enterprises ***with actual knowledge*** of the '784 Patent

- 18 -

and ***of the claim of ENEL that the '784 Patent was infringed by the making of the CampRight tent***.")(emphasis added). ***The corollary to that accusation*** is that Rightline is entitled to rely on the lack of communications to Lakeland and Mr. Schaefer. Plaintiffs cannot have it both ways – accuse Rightline of knowledge of the patent and earlier allegations of infringement but argue that Rightline did ***not*** have knowledge of the 2003 communications from plaintiffs to Lakeland and Mr. Schaefer alleging infringement of the '784 Patent in attempt to defeat Rightline's affirmative defenses of laches and estoppel.

Plaintiffs' reliance on *Radio Systems* further undermines their attempt to impose a narrow definition of a "successor-in-interest in privity." *Radio Systems* examined the totality of the circumstances before coming to a conclusion that privity was ***one way*** to entitle a successor to assert a predecessor's defense. The district court in *Radio Systems* found that because Radio Systems was in privity with Innotek, it could rely on the notice of infringement given to Innotek. *Radio Sys. Corp. v. Lalor*, No. C10-828-RSL, 2012 WL 254026, *8-10 (W.D. Wash. Jan. 26, 2012). The district court's analysis did not rely on the nature of the acquisition of the business from Innotek to Radio Systems, but instead took a practical approach and focused on the transferred product line:

> When [Patentees] misled Innotek into concluding that they were no longer pursuing their asserted claim, they certainly ran the risk that Innotek would expand its own reliance on its UltraSmart collar design. It is also perfectly foreseeable that Innotek ***would sell or transfer that design to a third party*** – as it did here – and that both Innotek and the acquiring company would rely on the absence of any ongoing dispute during the course of their dealings. Under these circumstances, the Court cannot conclude that it would be inequitable to preclude [Patentees] from pursuing claims against Radio Systems on the basis of its use of the UltraSmart design. Like Innotek, Radio Systems is entitled to summary judgment.

*Id*. at *10.  (emphasis added). The court's decision focused on the mere possibility that a

product "*__design__*" could be sold or transferred, not the nature of the corporate transactions.

The Federal Circuit affirmed, holding that equitable estoppel can apply to successors where privity has been established." *Radio Systems*, 709 F.3d at 1131 (citations omitted). The precise nature of the corporate relationship between the two accused entities is insignificant. *See Jamesbury*, 839 F.2d at 1555 n.49.

Tellingly, plaintiffs have not cited, nor can they cite, any Federal Circuit case that defines "successor in interest" in the extremely narrow manner urged by them. Nor have plaintiffs cited any cases holding that equitable defenses hinge on the corporate relationship being a "successor-in-interest in privity" as defined by plaintiffs. Indeed, that phrase never appears in the case law. The underlying facts of the corporate transactions in *Jamesbury* were never discussed and the facts of the corporate transactions in *Radio Systems* did not underpin the decision of the district court or Federal Circuit.

An examination of plaintiffs' other support reveals more problems with plaintiffs' proposed over-restrictive rule. Plaintiffs state that "the doctrine of privity is closely tied to the doctrine of *res judicata*, which binds parties and privies to judgments." Pls.' Mem. at 5-6. However, plaintiffs do not cite – because they cannot – any authority tying the analysis of privity in *res judicata* cases to cases involving laches and estoppel in a patent context. Nonetheless, Rightline briefly addresses the *res judicata* cases cited by plaintiffs.

In *Gillig*, the court analyzed whether privity existed between a company and its officer to determine if *res judicata* barred the officer from bringing a claim that the company could have asserted in an earlier lawsuit. *Gillig v. Nike, Inc.*, 602 F.3d 1354, 1362 (Fed. Cir. 2010). In that context, "privity" exists when a stockholder/officer controls the prior litigation so that the company represented his or her interests at that time. *Id*. This method of establishing privity is known as the "control of litigation"

exception. *Id.* The court in *Gillig* rejected the defendant's argument that privity was established, holding that "control of a *party* to the litigation through stock ownership or corporate officership is not enough to create privity …." *Id.* (emphasis in original). Even if this case were analogous, which it is not, it stands for the proposition that control of a party *does not* constitute privity – the exact opposite of the substantial dominion or financial control that plaintiff argues for.

In *A. Stucki Co. v. Worthington Indust., Inc.*, the court examined whether a parent corporation could be liable for the infringement of its subsidiary. 849 F.2d 593, 596 (Fed. Cir. 1988). Plaintiff relies on *A. Stucki* to argue globally that a stock sale transaction does not make a purchase a legal successor. Like *Gillig*, however, the court in *A. Stucki* was examining a different question than in the present case. Because there is no parent/subsidiary relationship between Lakeland and Rightline, a piercing the corporate veil analysis is not helpful here. Rather, as the *A. Stucki* court noted, the appropriate analysis and result changes with the underlying facts.  *See A. Stucki*, 849 F.2d at 596-97 (*comparing Eli Lilli & Co. v. Premo Pharma. Labs., Inc.*, 843 F.2d 1378 (Fed. Cir. 1988) (company that acquired new drug application and nothing more not a "successor" bound by injunction against application's former owner) *with Kloster Speedsteel AB v. Crucible Inc.*, 793 F.2d 1565, 1582 (Fed. Cir. 1986) (company that purchased facility used to manufacture infringing products was a "successor" bound by injunction against former owner)).

Even in the above cases – where equitable defenses were not in issue – the legal analysis did not turn on the application of "hard and fast" rules. Cases that have ruled on whether successors can assert the equitable defenses of predecessors have utilized a flexible approach. *See, e.g., Artic Cat, Inc. v. Injection Research Specialists, Inc.*, 362 F. Supp. 2d 1113, 1127 (D. Minn. 2005)(holding that an engine supplier was entitled to assert an equitable estoppel defense arising out of misleading conduct towards a manufacturer because engine supplier was the manufacturer's "privy"); *John C. Flood*

*of Virginia, Inc. v. John C. Flood, Inc.*, 700 F. Supp. 2d 90, 98-99 (D.D.C. 2010) (defendant was a "successor-in-interest" to original owner of trademarks because it bought the trademarks from the original owner's bankruptcy estate and was entitled to assert licensee estoppel defense of original owner); *see also Nat'l Football League v. Rondor*, 840 F. Supp. 1160, 1167-68 (N.D. Ohio 1993) (noting that in a copyright case that estoppel extends to both parties and their "privies").

Similarly, several Federal Circuit cases describe an entity that purchases assets as a "successor-in-interest" to the entity from which it purchased those assets. *See, e.g.*, *Kloster Speedsteel,* 793 F.2d at 1582 (holding that a company created after conclusion of a trial, but before judgment was issued, which had purchased the factories manufacturing the infringing product from the party against the original action was brought "must be deemed a successor in interest or an assign …."); *Horphag Research Ltd. v. Consac Indus., Inc.*, 116 F.3d 1450, 1453-54 (Fed. Cir. 1997)(referring to party that purchased assets as "successor in interest"); *Minn. Mining & Mfg. Co. v. Eco Chem, Inc.*, 757 F.2d 1256, 1263 (Fed. Cir. 1985)(joining a party as a defendant as a "successor in interest" in a patent infringement action "because it succeeded to ***the assets***" from which plaintiff could satisfy its judgment)(emphasis added); *see also Intellectual Property Development, Inc. v. TCI Cablevision of California, Inc.*, 248 F.3d 1333, 1341 (Fed. Cir. 2001) (referring to potential assignees of patent (an asset) as a "successor-in-interest").

A review of Title 35 of the United States Code ("Patents") shows that "successor" is used in a manner to describe someone that merely carries on the business of another, just as Rightline has done in this case. Both 35 U.S.C. §§41(c)(2) and 252 define "successor in business" as anyone who "made, ***purchased***, ***offered to sell***, or used anything protected by the patent within the United States, or imported anything protected by the patent into the United States." 35 U.S.C. §41(c)(2) (addressing lapse of patents); 35 U.S.C. §252 (effect of reissue). These sections address rights of others when a patentee fails to timely pay a maintenance fee (as happened with the '784 Patent, *see*

SoF, ¶¶31-37) or when a patent goes through a reissue examination. Title 35 embraces a broad definition of "successor in business" that is consistent with an application of equitable defenses where there is a business transfer involving all assets, goodwill, and all other intangibles, which is exactly what occurred between Mr. Schaefer and Lakeland as sellers and Rightline as buyer as described in detail above.

Instead of the application of strict rules, these cases show the flexibility of the analysis given different factual scenarios. In some instances, control is enough and in other cases, stock purchases or asset purchases were enough. Equitable estoppel, as the name portends, is equitable in nature, and this Court is given the flexibility to apply it differently in different circumstances given the particular case at hand. Plaintiffs' strict "successor-in-interest in privity" standard is contrary to these principles and should be rejected. However, plaintiffs do not just misstate Federal Circuit law; they go further by misstating South Carolina law.

### 3.    South Carolina Law does not Define "Successor-in-Interest" and the Common Meaning should Govern

First, plaintiffs made these same arguments regarding South Carolina law in their motion for partial judgment on the pleadings. *See* ECF No. 73-1. Rightline responded, pointing out that plaintiffs grossly misstated the law to the point that it was misleading. Tellingly, in their reply, ***plaintiffs did not respond to Rightline's correct interpretation of South Carolina law***. *See* ECF No. 77. Plaintiffs' re-assertion of these same contorted and misleading statements of law are the type of action that warrants sanctions under 28 U.S.C. §1927.

Second, South Carolina law (statutory or case law) simply does not define a "successor in interest." Plaintiffs rely on *Brown v. Am. Ry. Express Co.*, 123 S.E. 97, 98-99 (1924) for the proposition that a company is "presumed" not be a successor in interest unless one of four specific conditions are met: (1) there was an agreement to assume debts of the seller, (2) the circumstances surrounding the transaction warrants a finding

of a consolidation or merger of the companies, (3) it was a mere continuation of the predecessor, or (4) the transaction was fraudulent for the purpose of wrongfully defeating creditor's claims. Plaintiffs also rely on *Simmons v. Mark Lift Indust., Inc.*, 622 S.E.2d 213, 215 & n.1 (2005) for the proposition that an arms-length purchaser of assets with no continuity of officers, directors, or shareholders with the seller is not a mere continuation of the seller. These cases are not relevant to the issues before this Court.

In *Brown*, the pertinent issue was whether a "successor," American Railroad Express, was liable for a ***debt*** incurred by its "predecessor," Southern Express Company. 123 S.E. at 98. The court did not opine on or delineate rules for determining whether a company is a "successor in interest" or address equitable defenses. The only question in *Brown* was whether a successor may be held liable for the debts of a predecessor when the successor purchases assets from the predecessor. The list of conditions cited by plaintiffs refers to the allocation of liabilities, not whether one may step in the shoes of a predecessor for purposes of equitable defenses. *See Brown*, at 98-99 (listing conditions "to render a purchasing company liable for the debts of the selling corporation" and stating four conditions listed in Plaintiffs' memorandum).

The issue in *Simmons* was very similar to that in *Brown* and is also inapposite. *Simmons* analyzes whether "a plaintiff [may] maintain a product liability claim in South Carolina under a successor liability theory against a defendant which purchased only assets of a voluntary bankrupt selling company in an arms-length and court-approved bankruptcy sale …." 622 S.E.2d at 213-14. Citing *Brown*, the South Carolina Supreme Court held that there could be no liability. The issue of whether equitable defenses transferred was not discussed.

South Carolina law does not define "successor in interest" and instead applies a common sense understanding of the term as the purchaser of another's assets or property. *See, e.g.*, *Bardoon Properties, NV v. Eidolon Corp.*, 326 S.C. 166, 168, 485 S.E.2d 371, 372 (1997)(noting that a company that purchased property through

- 24 -

foreclosure was a "successor in interest"). To qualify as a successor company, a purchaser of another's assets need not have merged with the seller or even be a continuation of the seller, as those are only necessary if the purchaser is going to be held liable for the seller's debts per *Brown* and *Simmons*.  Purchasing select assets is enough to be a successor-in-interest under South Carolina law. Plaintiffs' statement in their motion that no South Carolina court "has ever held a purchaser of selected assets only to be a successor-in-interest" is demonstrably false as shown in the *Bardoon* case cited above, for example.

### C.    Rightline is a "Successor-in-Interest in Privity"

In the unlikely event the court finds that Rightline must be a "successor-in-interest in privity" with Lakeland and Mr. Schaefer to rely on the earlier periods of delay, Rightline meets this standard because privity exists. As the 9th Circuit has noted, "privity is a flexible concept dependent on the particular relationship between the parties in each individual set of cases." *Tahoe-Sierra Preservation Council, Inc. v. Tahoe Regional Planning Agency*, 322 F.3d 1064, 1081-82 (9th Cir. 2003).

Rightline was in privity with Mr. Schaefer and Lakeland in many ways (e.g., contractual, personal, working closely together after the closing of the asset purchase, etc.) and Rightline purchased Lakeland's assets (including all goodwill) with an eye toward incorporating the accused truck tent designs into its own product lines and carrying on the business, just as Radio Systems did with Innotek. SoF, ¶¶47-58; **Ex. 25**.

Additionally, Enel's patent attorney contacted Lakeland's principal, Mr. Schaefer, with allegations of infringement and invited licensing discussions. SoF, ¶¶23-24. Further communications occurred but plaintiffs Enel took no further action for almost nine years. SoF, ¶¶25-29. In the interim, the accused product line (truck tents) became the product of a successor company (Rightline) after Rightline acquired all of Lakeland's business concerns and assets. SoF, ¶¶47-58. The purchase included "all or substantially all of the non-real property assets of [Lakeland]."  SoF, ¶49; **Ex. 25** at 000001 as well as

all the goodwill and intangibles. SoF, ¶¶49-51; **Ex. 25** at Schedules 1.1, 1.2 (RIGHTLINE 000011, 000015). The "Agreement Ancillary to Sale of Business Assets" states that Rightline "will carry on the business operations and activities of [Lakeland] in substantially the same manner as such business was conducted by [Lakeland] prior to the acquisition." SoF, ¶55; **Ex. 25** at RIGHTLINE 000019. The only item excluded from the sale was Lakeland's real property. SoF, ¶49; **Ex. 25** at RIGHTLINE 000001.

   In their motion, Plaintiffs take issue with the fact that no manufacturing facilities, real property, leases, cash, bank accounts . . . etc. changed hands in the sale. This view fails to take into account that both companies are very small and had no manufacturing facilities, real property, or leases. SoF, ¶59. In effect, Mr. Schaefer sold Rightline the business that he was running out of his garage. *Id.* The assets exchanged in the purchase were the bulk of what Lakeland owned, and Schaefer kept the Lakeland Enerprises, LLC entity alive merely out of the possibility that he might pursue future businesses. SoF, ¶60. Rightline essentially purchased everything that Lakeland owned. The purchased assets – the truck tent line of business – form the basis of this lawsuit and the equitable defenses at issue. To deny Rightline the ability to assert equitable estoppel because there were simply no more assets to purchase from Lakeland would ignore the equities of this case and rob many small companies of equitable defenses, including Rightline.

## IV.   CONCLUSION

   Rightline is not required to be a "successor-in-interest in privity" with Mr. Schaefer and Lakeland to rely on the defenses of equitable estoppel and privity. Plaintiffs' nine year delay is inexcusable and has caused prejudice to Rightline. Summary judgment on the defenses of equitable estoppel and laches is appropriate. Even if Rightline is required to be a "successor-in-interest in privity" with Mr. Schaefer and Lakeland, Rightline satisfies that requirement. Finally, summary judgment is particularly appropriate here because plaintiffs have conceded that there does not need to be any further discovery on these issues before the Court enters summary judgment.

DATED: August 5, 2013

Respectfully submitted,

**WOMBLE CARLYLE SANDRIDGE & RICE, LLP**

By:     /s/ *Behrooz Shariati*
        Behrooz Shariati (State Bar No. 174436)
        10050 North Wolfe Road, Suite 260
        Cupertino, CA  95014
        Telephone: (408) 341-3040
        Email: bshariati@wcsr.com

        Jacob Wharton (*Admitted Pro Hac Vice*)
        One West Fourth Street
        Winston-Salem, NC  27101
        Telephone:  (336) 747-6609
        Facsimile:   (336) 726-6985
        Email:  jwharton@wcsr.com

        Attorneys for Defendants/Counterclaimants
        RIGHTLINE GEAR, INC.
        CABELA'S INCORPORATED
        SPORTSMAN'S WAREHOUSE, INC.

**CERTIFICATE OF SERVICE**

The undersigned certifies that on August 5, 2013 I caused a true and correct copy of **DEFENDANT RIGHTLINE GEAR, INC.'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT AND IN SUPPORT OF CROSS-MOTION FOR PARTIAL SUMMARY JUDGMENT** to be served on all counsel of record via the Court's CM/ECF system.

DATED:  August 5, 2013

*/s/ Behrooz Shariati*
Behrooz Shariati