1
2
3
4
5
6
7
8          UNITED STATES DISTRICT COURT
9          SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ENEL COMPANY, LLC, *et al.*, | CASE NO. 12-cv-1369-IEG(WMC) |
| Plaintiffs, | **AMENDED ORDER:** |
| | **(1) DENYING PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT; AND** |
| v. | **(2) GRANTING IN PART AND DENYING IN PART DEFENDANT'S CROSS-MOTION FOR PARTIAL SUMMARY JUDGMENT** |
| DAVID R. SCHAEFER, *et al.*, | |
| Defendants. | **[Doc. Nos. 85, 94]** |
| AND RELATED CROSS AND COUNTER CLAIMS. | |

        On June 6, 2012, Plaintiff Enel Company, LLC ("Enel") commenced this
patent-infringement action against various defendants, including Defendant
Lakeland Gear, Inc., which is now known as Rightline Gear, Inc. ("Rightline").
Plaintiff Lee B. Cargill later joined Enel in prosecuting this action.  Presently before
the Court are the parties' cross-motions for partial summary judgment.  Both
motions are opposed.
/ / /

12cv1369

The Court found these motions suitable for determination on the papers submitted and without oral argument.  <u>See</u> Civ. L.R. 7.1(d.1).  For the following reasons, the Court **DENIES** Plaintiffs' motion for partial summary judgment, and **GRANTS IN PART** and **DENIES IN PART** Defendant's cross-motion for partial summary judgment.

## BACKGROUND

On October 18, 2000, Mr. Cargill filed a provisional patent application for a "pickup truck tent camping system."  (Def.'s Mot. Ex. 1.)  In the provisional application, he summarized the invention as having three subsystems, "each of which removably mount to the cargo box of [a] truck": (1) a tent assembly with removal cover, (2) an elevated platform assembly, and (3) a travel cover assembly.  Mr. Cargill subsequently assigned the patent to Enel.  On November 19, 2002, U.S. Patent Number 6,481,784 ("Patent '784") was issued for Plaintiffs' pickup truck tent camping system.  (Def.'s Mot. Ex. 11.)

By 2003, Mr. Cargill was aware of other truck tents available on the market, including David Schaefer and Lakeland Enterprises, LLC's "Camp-Right" truck tent.[1]  (Def.'s Mot. Exs. 3, 5.)  On July 31, 2003, Plaintiffs' counsel sent Mr. Schaefer a letter identifying Enel as the owner of Patent '784 and Mr. Cargill as the inventor of a "truck tent camping system."  (Def.'s Mot. Ex. 12.)  He noted that Mr. Schaefer's "Camp Right" truck tent was noticed on a website and "thought that [Mr. Schaefer] should be highly interested in the '784 patent."  (<u>Id.</u>)  Sometime thereafter, Mr. Schaefer responded, stating that he was "quite confident there is no infringement what so ever," and expressed that he was not interested in discussing licensing at that time.  (Def.'s Mot. Ex. 16.)  This prompted a response from Plaintiffs' counsel on August 18, 2003, demanding that Mr. Schaefer "immediately

---

[1] Mr. Schaefer owned and controlled Lakeland Enterprises, LLC ("Lakeland").  Mr. Schaefer and Lakeland are also defendants in this action, but they are not moving parties in the pending cross-motions for partial summary judgment.  Mr. Schaefer and Lakeland do, however, separately oppose Plaintiffs' partial-summary-judgment motion.  (Doc. No. 96.)

cease and desist making, having made, using, selling, offering to sell, and importing [his] infringing products or be prepared to face infringement litigation." (Def.'s Mot. Ex. 17.)  On October 22, 2003, Lakeland's counsel sent a letter to Plaintiffs' counsel identifying distinctions between the parties' respective truck tents, and requesting observations and comments directed to specific elements raised. (Def.'s Mot. Ex. 19.)  Plaintiffs did not respond.

The parties agree that there was no correspondence from October 2003 until this lawsuit was filed.  During that time period, in August 2008, Mr. Schaefer sold "all or substantially all of the non-real property assets" of Lakeland to Defendant Rightline.  (Def.'s Mot. Ex. 25; Pls.' Mot. Ex. A; Evans Decl. ¶ 3.)  After the purchase, Defendant invested over $320,000 in the business purchased from Lakeland, which included the truck-tent product line. (Evans Decl. ¶¶ 13–14.)  It also increased its vendors from approximately 2 vendors in 2008 to 32 vendors as of June 2012.  (Id. ¶ 16.)

On June 6, 2012, Plaintiffs commenced this action, asserting claims for the infringement of Patent '784, and injunctive relief.  In response to the complaint, Defendant, Mr. Schaefer, and Lakeland assert equitable affirmative defenses, including laches and equitable estoppel.  They contend that Plaintiffs' claims are barred, in whole or in part, by these equitable defenses.  The parties now cross move for partial summary judgment.  Both motions are opposed.

## DISCUSSION

### I.    Legal Standard

Summary judgment is appropriate under Rule 56(c) where the moving party demonstrates the absence of a genuine issue of material fact and is entitled to judgment as a matter of law.  See Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); Satterfield v. Simon & Schuster, Inc., 569 F.3d 946, 950 (9th Cir 2009).  A fact is material when, under the governing substantive law, it could affect the outcome of the case.  Anderson v. Liberty Lobby, Inc., 477 U.S.

242, 248 (1986).  A dispute about a material fact is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  <u>Anderson</u>, 477 U.S. at 248.

A party seeking summary judgment always bears the initial burden of establishing the absence of a genuine issue of material fact.  <u>Celotex</u>, 477 U.S. at 323.  The moving party can satisfy this burden in two ways: (1) by presenting evidence that negates an essential element of the nonmoving party's case; or (2) by demonstrating that the nonmoving party failed to make a showing sufficient to establish an element essential to that party's case on which that party will bear the burden of proof at trial.  <u>Id.</u> at 322-23.  "Disputes over irrelevant or unnecessary facts will not preclude a grant of summary judgment."  <u>T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n</u>, 809 F.2d 626, 630 (9th Cir. 1987).

"The district court may limit its review to the documents submitted for the purpose of summary judgment and those parts of the record specifically referenced therein."  <u>Carmen v. S.F. Unified Sch. Dist.</u>, 237 F.3d 1026, 1030 (9th Cir. 2001).  Therefore, the court is not obligated "to scour the record in search of a genuine issue of triable fact."  <u>Keenan v. Allen</u>, 91 F.3d 1275, 1279 (9th Cir. 1996) (citing <u>Richards v. Combined Ins. Co. of Am.</u>, 55 F.3d 247, 251 (7th Cir. 1995)).  If the moving party fails to discharge this initial burden, summary judgment must be denied and the court need not consider the nonmoving party's evidence.  <u>Adickes v. S.H. Kress & Co.</u>, 398 U.S. 144, 159-60 (1970).

If the moving party meets this initial burden, the nonmoving party cannot defeat summary judgment merely by demonstrating "that there is some metaphysical doubt as to the material facts."  <u>Matsushita Elec. Indus. Co., v. Zenith Radio Corp.</u>, 475 U.S. 574, 586 (1986); <u>Triton Energy Corp. v. Square D Co.</u>, 68 F.3d 1216, 1221 (9th Cir. 1995) ("The mere existence of a scintilla of evidence in support of the nonmoving party's position is not sufficient.") (citing <u>Anderson</u>, 477 U.S. at 242, 252).  Rather, the nonmoving party must "go beyond the pleadings" and by "the

depositions, answers to interrogatories, and admissions on file," designate "specific facts showing that there is a genuine issue for trial." Celotex, 477 U.S. at 324 (quoting Fed. R. Civ. P. 56(e)).

When making this determination, the court must view all inferences drawn from the underlying facts in the light most favorable to the nonmoving party. See Matsushita, 475 U.S. at 587. "Credibility determinations, the weighing of evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge, [when] he [or she] is ruling on a motion for summary judgment." Anderson, 477 U.S. at 255.

Rule 56(d) provides for partial summary judgment. See Fed. R. Civ. P. 56(d) ("[T]he court . . . shall if practicable ascertain what material facts exist without substantial controversy and what material facts are actually and in good faith controverted."). Under Rule 56(d), the court may grant summary judgment on less than the non-moving party's whole claim. Zapata Hermanos Sucesores, S.A. v. Hearthside Baking Co., Inc., 313 F.3d 385, 391 (7th Cir. 2002) (Posner, J.). Partial summary judgment is a mechanism through which the court deems certain issues established before trial. Lies v. Farrell Lines, Inc., 641 F.2d 765, 769 n.3 (9th Cir. 1981). "The procedure was intended to avoid a useless trial of facts and issues over which there was really never any controversy and which would tend to confuse and complicate a lawsuit." Id. (internal quotation marks omitted).

The mere fact that the parties filed cross-motions "does not necessarily mean there are no disputed issues of material fact and does not necessarily permit the judge to render judgment in favor of one side or the other." Starsky v. Williams, 512 F.2d 109, 112 (9th Cir. 1975). "[E]ach motion must be considered on its own merits." Fair Hous. Council of Riverside Cnty., Inc. v. Riverside Two, 249 F.3d 1132, 1136 (9th Cir. 2001). Also, the court must consider evidence submitted in support of and in opposition to both motions before ruling on either one. Id.
/ / /

## II.    Equitable Defenses and Legal Successors-in-Interest in Privity

Plaintiffs argue in their motion that Defendant cannot assert the defense of laches or equitable estoppel, and that summary judgment is proper barring Defendant from doing so.  They premise their argument on the proposition that "[e]quitable defenses . . . are personal to the party asserting them," and thus "*only* a legal successor-in-interest in privity may assert equitable defenses personal to its predecessor."  (Pls.' Mot. 4:7–10, 5:17–20 (emphasis in original).)  Relying on Radio Systems, Jamesbury, Aukerman, and a few other Federal Circuit cases,[2] Plaintiffs contend that a "common theme" emerges requiring "a complete transfer of a corporation or financial control" before a successor is entitled to assert its predecessor's equitable defenses.  (See id. at 6:22–7:25.)  Plaintiffs argue that Defendant does not satisfy that requirement and thus cannot assert its predecessor's defenses of laches or equitable estoppel.  (See id.)  However, Plaintiffs' contention is a misunderstanding of the law.

The application of the defense of equitable estoppel and laches are "committed to the sound discretion of the trial judge."  Radio Sys. Corp. v. Lalor, 709 F.3d 1124, 1130 (Fed. Cir. 2013); A.C. Aukerman Co. v. R.L. Chaides Constr. Co., 960 F.2d 1020, 1028 (Fed. Cir. 1992) (en banc).  Federal Circuit precedent "confirms that equitable estoppel applies to successors-in-interest where privity has been established."  Radio Sys., 709 F.3d at 1130 (citing Jamesbury Corp. v. Litton Indus. Prods., Inc., 839 F.2d 1544, 1555 (Fed. Cir. 1988), overruled on other grounds by Aukerman, 960 F.2d at 1042).  "[A] determination of laches is not made upon the application of 'mechanical rules.'"  Aukerman, 960 F.2d at 1032 (citing Holmberg v. Armbrecht, 327 U.S. 392, 396 (1946)).  Rather, a "court must look at all of the particular facts and circumstances of each case and weigh the equities of

---

[2] The other cases that Plaintiffs cite are: Gillig v. Nike, Inc., 602 F.3d 1354, 1362 (Fed. Cir. 2009), A. Stucki Co. v. Worthington Industries Inc., 849 F.2d 593, 596-97 (Fed. Cir. 1988), and Eli Lilly & Co. v. Premo Pharmaceuticals Laboratories, Inc., 843 F.2d 1378, 1382 (Fed. Cir. 1988). (Pls.' Mot. 7:3–13.)

the parties." Id. "Like laches, equitable estoppel is not limited to a particular factual situation nor subject to resolution by simple or hard and fast rules." Id. at 1041.

In Radio Systems, Radio Systems Corporation and Innotek, Inc. filed a declaratory-judgment action against patentees Tom Lalor and Bumper Boy, Inc. 709 F.3d at 1125-26. Radio Systems acquired Innotek a year after Bumper Boy sent Innotek its first demand letter. Id. at 1126. The district court granted summary judgment for Radio Systems, finding that Bumper Boy was equitably estopped from alleging that Radio Systems infringed the patents. Id. at 1130. On appeal, the Federal Circuit confirmed that equitable estoppel applies to successors-in-interest where privity has been established, and held that the district court did not abuse its discretion in concluding that equitable estoppel applied to one of Bumper Boy's patent-infringement allegations against both Innotek and its successor-in-interest Radio Systems. Id. at 1131. The Federal Circuit also specifically noted that the district court's privity findings are not challenged on appeal. Id. Contrary to Plaintiffs' argument, the Federal Circuit did not explicitly or implicitly narrowly define a successor or privity as requiring a complete transfer of a corporation or financial control. See id.

Similarly, Plaintiffs' reliance on Jamesbury is unavailing. In fact, the Federal Circuit did not even use the word "privity" in their opinion, and used the phrase "successor in interest" only once to describe the defendant-appellee in its holding that the successor is liable for the knowledge of its predecessor's potential infringement. Jamesbury, 839 F.2d at 1555. The court added a corollary that the successor is entitled to rely on the lack of communication to the predecessor as well as to itself. Id. Again, the Federal Circuit did not explicitly or implicitly narrowly define a successor or privity in the manner that Plaintiffs suggest. See id.

/ / /

/ / /

1    Plaintiffs' reliance on Gillig, Strucki, and Eli Lilly all suffer from this same
2    defective understanding.  See Gillig, 602 F.3d at 1362; Stucki, 849 F.2d at 596-97;
3    Eli Lilly, 843 F.2d at 1382.  Additionally, these cases are all distinguishable because
4    none of them address the doctrine of laches or equitable estoppel.  See Gillig, 602
5    F.3d at 1362 (discussing privity in the context of *res judicata*); Stucki, 849 F.2d at
6    596-97 (discussing liability to patentholder for direct infringement under
7    corporate/successor liability); Eli Lilly, 843 F.2d at 1382 (addressing issue of
8    whether an injunction also binds successors-in-interest in privity).  Consequently,
9    none of the aforementioned cases examine questions of law that are applicable to
10   this case.

11   Ultimately, Plaintiffs fail to demonstrate that any of the cited cases bar
12   Defendant from asserting the defense of laches and equitable estoppel.[3]  The Federal
13   Circuit cases that they cite do not support the proposition that "a complete transfer
14   of a corporation or financial control" is necessary for a successor to assert equitable
15   defenses available to the predecessor.  The absence of any affirmative language
16   supporting Plaintiffs' contention among Federal Circuit cases suggests the complete
17   opposite, that both equitable defenses are indeed available for Defendant to assert
18   here as a successor-in-interest to Lakeland.  See, e.g., Radio Sys., 709 F.3d at 1130.
19   Therefore, Plaintiffs fail to show that they are entitled to partial summary judgment.

20   **III.    Defendant's Defenses of Laches and Equitable Estoppel**

21   Defendant argues in their cross-motion that it is entitled to summary
22   judgment on its equitable affirmative defenses of laches and equitable estoppel
23   because the undisputed facts show that it satisfies each of the elements required for

24   _____

25   [3] Plaintiffs reference two South Carolina cases in its motion: Brown v. American Ry. Express
     Co., 128 S.C. 428 (1924), and Simmons v. Mark Lift Industries, Inc., 366 S.C. 308 (2005).  (Pls.' Mot.
26   6:8–22.)  Brown is cited out of context in that it addresses a purchasing company's liability of debts
     of a selling corporation; it does not analyze privity or the equitable defenses that are at issue here. 128
27   S.C. at 428.  Similarly, Simmons addresses a successor's tort liability after the purchase of assets; it
     also does not analyze privity, equitable estoppel, or laches.  366 S.C. at 312-13.  Thus, neither case is
28   relevant to the Court's analysis.  Moreover, Plaintiffs do not reference South Carolina law again in
     their reply brief, suggesting that they have abandoned this line of argument.

both defenses.  (Def.'s Mot. 3:19–14:24.)  Plaintiffs respond on three grounds: (1) Defendant is not a successor-in-interest and thus cannot "tack" onto Lakeland's defenses, (2) there are disputed facts rendering summary judgment improper, and (3) Defendant fails to show that it was prejudiced by Plaintiffs' silence.  (Pls.' Opp'n 5:5–9:4, 9:8–14:7.)  The Court will address the arguments below.

### A.    Laches

"[L]aches may be defined as the neglect or delay in bringing suit to remedy an alleged wrong, which taken together with lapse of time or other circumstances, causes prejudice to the adverse party and operates as an equitable bar."  Aukerman, 960 F.2d at 1029.  "[It] focuses on the dilatory conduct of the patentee and the prejudice which the patentee's delay has caused."  Id. at 1031-32.  "[A] determination of laches is not made upon the application of 'mechanical rules.'"  Id. at 1029.  Rather, its application is "committed to the sound discretion of the district court."  Id. at 1032.  "[L]aches bars relief on a patentee's claim only with respect to damages accrued prior to suit."  Odetics, Inc. v. Storage Tech. Corp., 185 F.3d 1259, 1272-73 (Fed. Cir. 1999) (quoting Aukerman, 960 F.2d at 1041) (internal quotation marks omitted).  It results "in the patentee abrogating his right to exclude any infringing products sold prior to the filing of the complaint."  Id. at 1273.

It is well settled that to invoke the laches defense, a defendant has the burden to prove two factors: (1) "the plaintiff delayed filing suit for an unreasonable and inexcusable length of time from the time the plaintiff knew or reasonably should have known of its claim against the defendant"; and (2) "the delay operated to the prejudice or injury of the defendant."  Aukerman, 960 F.2d at 1032 (citing, among other cases, Costello v. United States, 365 U.S. 265, 282 (1961)).  "The length of time which may be deemed unreasonable has no fixed boundaries but rather depends on the circumstances."  Id. (citing, among other cases, Galliher v. Cadwell, 145 U.S. 368, 373 (1892)).  "The period of delay is measured from the time the plaintiff knew or reasonably should have known of the defendant's alleged

infringing activities to the date of suit." Id.  However, the laches period does not begin prior to the issuance of the patent.  Meyers v. Asics Corp., 974 F.2d 1304, 1307 (Fed. Cir. 1992) (citing Aukerman, 960 F.2d at 1032).

A "presumption of laches arises if the patentee delays bringing suit for more than six years after actual or constructive knowledge of the defendant's infringing activity."  Ecolab, Inc. v. Envirochem, Inc., 264 F.3d 1358, 1371 (Fed. Cir. 2001) (citing Aukerman, 960 F.2d at 1035-36).  The effect of this presumption is that the two facts of unreasonable delay and prejudice "*must* be inferred, absent rebuttal evidence."  Aukerman, 960 F.2d at 1037 (emphasis in original).  "[T]he presumption of laches may be eliminated by offering evidence to show an excuse for the delay or that the delay was reasonable, even if such evidence may ultimately be rejected as not persuasive[,]" or by "offer[ing] evidence sufficient to place the matters of defense prejudice and economic prejudice genuinely in issue."  Id. at 1038.  "Elimination of the presumption does not mean the patentee precludes the possibility of a laches defense; it does mean, however, that the *presumption* of laches plays no role in the ultimate decision."  Id. (emphasis added).

There is no dispute between the parties that there was a delay on the part of Plaintiffs.  However, there is a dispute regarding when the laches period began, which the parties agree is purely a legal question.  (See Pls.' Opp'n 5:8–9; Def.'s Reply 4:12–6:24.)  Depending on when the laches period began, Plaintiffs may bear the burden of rebutting the presumption of laches.  See Aukerman, 960 F.2d at 1037.

### 1. The Laches Period

Generally, the laches defense is personal to a particular party.  Aukerman, 960 F.2d at 1032; see also Wanlass v. Fedders Corp., 145 F.3d 1461, 1464 (Fed. Cir. 1998) (period of delay measured from the time the plaintiff knew or reasonably should have known of the defendant's alleged infringing activities).  "The federal circuit has not, in the laches context, prescribed the standard to be applied in

determining whether an alleged infringer may 'tack on' delay periods from prior infringing activity[.]" Engineered Prods. Co. v. Donaldson Co., Inc., 165 F. Supp. 2d 836, 854 (N.D. Iowa 2001).  Regardless, there "never has been any magic in corporate entity[,]" and disallowing tacking for a successor infringing corporation "is not in the ends of justice" and promotes "form-over-substance."  Raber v. Pittway Corp., No. C 92-2581, 1994 WL 374542, at *3 (N.D. Cal. July 11, 1994) (quoting Am. Home Prods. Corp. v. Lockwood Mfg. Co., 173 U.S.P.Q. 486 (S.D. Ohio 1972), aff'd, 483 F.2d 1120 (6th Cir. 1973)).  Consequently, several courts have adopted the rule that tacking should be allowed "in cases where only the ownership of the defendant-business changes hands."  Id. (quoting 6 Donald S. Chisum, Patents, § 19.05[2][a][ii]); Radar Indus., Inc. v. Cleveland Die & Mfg. Co., 632 F. Supp. 2d 686, 692 (E.D. Mich. 2009); Five Star Mfg., Inc. v. Ramp Lite Mfg., Inc., 44 F. Supp. 2d 1149, 1156 (D. Kan. 1999) (a defendant may tack when there is "some formal transfer of the technology and good-will of the accused product"); Sec. & Access (Elec. Media) Ltd. v. Nokia, Inc., No. 95-1689, 1997 WL 158308, at *4 (M.D. Fla. Mar. 24, 1997).  This Court adopts the aforementioned rule allowing tacking.

Both parties provide undisputed evidence that Defendant purchased "all or substantially all of the non-real property assets" from Lakeland.  (Def.'s Mot. Ex. 25; Pls.' Mot. Ex. A ("Purchase Agreement").)  There is no dispute regarding the contents of the Purchase Agreement or its authenticity.  According to the Purchase Agreement, all of Lakeland's equipment, inventory, and "good will and other intangibles" changed ownership.  (Purchase Agreement § 1.1, Schedule 1.1–1.2.) The good will associated with Lakeland included all trademarks, tradenames, logos, websites, domain names, and phone numbers; and the other intangibles included all designs, conceptual sketches, material samples, packaging materials and photography, correspondence with manufacturing facilities, prepared quotations and other research materials regarding the production of new Lakeland products.  (Id.

Schedule 1.1.)  The Purchase Agreement explicitly states that these new products included "any SUV Tent prototypes, Self Inflating Sleeping Pad prototypes, Truck Tent Rechargeable Light prototypes and all products from competitor companies used to create or evaluate Lakeland Enterprises LLC products."  (Id.)  The Purchase Agreement demonstrates that there was a substantial change of ownership, including technology and good will, of the "accused" truck tent to Defendant.[4]  See Five Star Mfg., 44 F. Supp. 2d at 1156; see also Raber, 1994 WL 374542, at *3.  Therefore, Defendant may "tack on" the delay period from the alleged infringing activity of its predecessor Lakeland.  See Raber, 1994 WL 374542, at *3.

Plaintiffs first accused Lakeland of the alleged infringement when they sent Lakeland a letter on July 31, 2003, identifying Enel as the owner of Patent '784 and directing Lakeland to the "truck tent system invented by Lee Cargill."  (See Def.'s Mot. Ex. 12.)  That letter shows that Plaintiffs were aware of Defendant's "Camp Right" truck tent as of July 31, 2003, at the latest.  (See id.)  Defendant provides additional correspondences between Plaintiffs and Lakeland that are also not in dispute: (1) Lakeland's undated response to Plaintiffs' July 31, 2003 letter (id. Ex. 16); (2) Plaintiff's demand letter sent to Lakeland dated August 18, 2003 (id. Ex. 17); and (3) Lakeland's letter identifying distinctions between the parties' respective truck tents, and requesting observations and comments directed to specific elements raised dated October 22, 2003 (id. Ex. 19).  The parties agree that there was no additional correspondence after October 22, 2003 until this lawsuit was filed on June 6, 2012.  The time that lapsed during that period is over 8 years and 9 months. That 8+ year delay in bringing suit after having knowledge of the alleged infringing activity results in a presumption of laches against Plaintiffs.  See Ecolab, 264 F.3d

---

[4] Plaintiffs argue that Defendant cannot tack onto its predecessor's laches period. (Pls.' Opp'n 6:6:9–7:19.)  This argument is based on the faulty premise, which the Court discussed above, that "[p]rivity requires either complete transfer of a corporation or financial control of one party over another."  (See id. at 6:9–13, 7:4–19.)  The Court, once again, rejects this argument.

1    at 1371 (citing <u>Aukerman</u>, 960 F.2d at 1035-36).

2                    **2.      Rebutting the Laches Presumption**

3          Plaintiffs do not attempt to rebut the laches presumption by offering evidence

4    showing an excuse or that the delay was reasonable.  Rather, relying on the distorted

5    premise that "lack of prejudice rebuts a presumption of laches," Plaintiffs argue that

6    Defendant's summary-judgment motion should be denied because Defendant fails to

7    establish that it suffered evidentiary or economic prejudice.  (Pls.' Opp'n

8    10:4–14:15.)

9          "A patentee may . . . eliminate the presumption [of laches] with an offer of

10   evidence sufficient to place the matters of defense prejudice and economic prejudice

11   genuinely at issue." <u>Aukerman</u>, 960 F.2d at 1038.  "Thus, the patentee may

12   eliminate the presumption by offering proof that no *additional* prejudice occurred in

13   the six-year time period, *i.e.*, that evidence respecting an alleged infringer's

14   defenses remains available substantially as before the delay and that economic

15   prejudice . . . has not occurred." <u>Id.</u> (emphasis in original).  In other words, the

16   laches presumption shifts the burden of production to the patentee. <u>See</u> <u>Serdarevic</u>

17   <u>v. Advanced Med. Optics, Inc.</u>, 532 F.3d 1352, 1360 (Fed. Cir. 2008).  It does not

18   mean, as Plaintiffs state, that a "lack of prejudice rebuts the presumption of laches."

19   <u>See</u> <u>id.</u>

20         "Material prejudice to adverse parties resulting from the plaintiff's delay is

21   essential to the laches defense." <u>Aukerman</u>, 960 F.2d at 1033.  "Such prejudice may

22   be either economic or evidentiary." <u>Id.</u>  "Evidentiary, or 'defense' prejudice, may

23   arise by reason of a defendant's inability to present a full and fair defense on the

24   merits due to the loss of records, the death of a witness, or the unreliability of

25   memories of long past events, thereby undermining the court's ability to judge the

26   facts." <u>Id.</u>  "Economic prejudice may arise where a defendant and possibly others

27   will suffer the loss of monetary investments or incur damages which likely would

28   have been prevented by earlier suit." <u>Id.</u>  "Prejudice may be shown by a change of

economic position flowing from actions taken or not taken by the patentee." Aspex
Eyewear Inc. v. Clariti Eyewear, Inc., 605 F.3d 1305, 1312-13 (Fed. Cir. 2010)
(citing ABB Robotics, Inc. v. GMFanuc Robotics Corp., 52 F.3d 1062, 1065 (Fed.
Cir. 1995) ("[C]ases in which economic prejudice has been found lacking did not so
hold because of a lack of capital investments, but, rather, because the alleged
infringer failed to prove that their increased expenditures, i.e., on marketing and
development, were in any way related to actions taken by the patentee.")).
Although "increasing sales . . . may constitute economic prejudice," they alone are
not always sufficient to prove that prejudice. See ABB Robotics, 52 F.3d at 1062.

Defendant contends that it sustained both evidentiary and economic prejudice
as a result of Plaintiffs' delay. For example, relying on Plaintiffs' failure to respond
to the October 22, 2013 letter, Lakeland and Mr. Schaefer continued to
manufacture, market, and sell their truck tents, ultimately selling the entire truck-
tent business to Defendant. (Def.'s Mot. Ex. 15.) Defendant, in turn, continued to
"heavily" invest in and expand the truck-tent business, investing over $320,000 in
the "overall Rightline business," which includes truck tents, and increased its
vendors from 2 vendors in 2009 to 32 vendors in 2012. (Loren Decl. ¶¶ 6–9,
13–18.) Defendant also adds that it "has not had any reason to retain all documents
from 2008 and shortly thereafter," and Lakeland and Mr. Schaefer have not retained
much of the documentation from 2003 "including but not limited to
contemporaneous notes, sketches, financial documents, invoices, bank transaction
information, cost of goods sold and expense information." (Def.'s Mot. Ex. 15.)
Because the laches presumption applies here, prejudice is necessarily inferred,
absent rebuttal evidence. See Aukerman, 960 F.2d at 1037 ("With the [laches]
presumption, these facts [of unreasonable delay and prejudice] *must* be inferred,
absent rebuttal evidence."). Consequently, the Court presumes that prejudice
resulted from the 8+ year delay, and now it is Plaintiffs' burden to produce evidence
to rebut that presumption of prejudice. See Serdarevic, 532 F.3d at 1360-61.

Plaintiffs base their rebuttal on four grounds: (1) Defendant's motion is based on disputed facts, rendering summary judgment inappropriate; (2) Defendant did not rely on Plaintiffs' silence to its prejudice; (3) Defendant fails to establish economic prejudice; and (4) Defendant fails to establish evidentiary prejudice.  (Pls.' Opp'n 9:5–14:15.)  Plaintiffs provide evidence of Defendant's Internet-domain registry and Defendant's "Responses and Objections to Plaintiffs' First Set of Requests for Production of Documents and Things."  (See Pls.' Opp'n Exs. A, B.)  However, Plaintiffs do not actually cite either exhibit in their rebuttal arguments.

To begin, the Court reiterates that prejudice to Defendant as a result of Plaintiffs' 8+ year delay in bringing suit is presumed.  See Aukerman, 960 F.2d at 1037.  It is not Defendant's responsibility, as Plaintiffs argue, to demonstrate economic or evidentiary prejudice following the finding that Defendant is entitled to the laches presumption.  See id.  Rather, it is Plaintiffs' burden to produce evidence rebutting the presumption of prejudice by showing that the evidence that they produce creates a genuine issue of material fact.  See id.  Plaintiffs fail to fulfil their burden.

Starting with evidentiary prejudice, the entirety of Plaintiffs' rebuttal argument is as follows:

> Evidentiary prejudice amounts from an inability to present a full and fair defense, essentially handicapping the court from making a judgment based on all the facts.  Rightline has not specifically identified any records which have been destroyed since 2008 and are necessary to Rightline's defense.  Rightline has not alleged that any key witnesses have died, or that they no longer remember essential facts.  Rightline simply states that it "has not had any reason to retain all documents form [sic] 2008 and shortly thereafter."  Conclusory statements are not sufficient to demonstrate evidentiary prejudice.  Rightline's insufficient showing fails to establish that Rightline suffered evidentiary prejudice.

(Pls.' Opp'n 13:17–14:7 (citations omitted).)  It is apparent that Plaintiffs proceed with their argument under the false premise that Defendant carries some burden to demonstrate evidentiary prejudice.  However, Plaintiffs are mistaken.  Defendant does not carry any such a burden, and prejudice is presumed because of Plaintiffs'

8+ year delay.  See Aukerman, 960 F.2d at 1037.  Regardless, and contrary to Plaintiffs' argument, Defendant does identify evidence to support its position that it sustained evidentiary prejudice.  (See Def.'s Mot. Ex. 15.)

More importantly, Plaintiffs fail to produce or identify any evidence that creates a genuine issue of material fact as to evidentiary prejudice.  See id. at 1033. Plaintiffs do not direct the Court to a single shred of evidence.  (See Pls.' Opp'n 13:17–14:7.)  Therefore, Plaintiffs fail to rebut the presumption of laches, which is enough for the Court to conclude that summary judgment is appropriate and the doctrine of laches bars Plaintiffs' patent-infringement claim.  See Serdarevic, 532 F.3d at 1360-61 (affirming district court's conclusion that the plaintiff failed to meet her burden of production on evidentiary prejudice, and, as a result, the district court did not reach the issue of economic prejudice).

Though the Court need not continue to its analysis of economic prejudice, it will nonetheless address Plaintiffs' attempt to rebut the presumption of economic prejudice, which ultimately suffers from the same failure to produce evidence as with evidentiary prejudice.   Defendant provides evidence that it "heavily" invested in and expanded its truck-tent business, the most prominent being Defendant's purchase of Lakeland's assets.  (See, e.g., Def.'s Mot. Ex. 15; Loren Decl. ¶¶ 6–9, 13–18.)  Rather than producing evidence to rebut the presumption of economic prejudice, Plaintiffs only present an alternative interpretation of Defendant's evidence: "Rightline . . . did not rely on Plaintiffs' silence.  Rather, Rightline relied on its own investigation before the purchase as well as non-infringement opinions obtained after Lakeland Enterprises was purchased."  (Pls.' Opp'n 11:17–21 (emphasis in original).)  Foremost, reliance is not an element of the laches defense. See Aukerman, 960 F.2d at 1032.  Thus, even if Plaintiffs' contention is true, it is irrelevant to this analysis because it does not address the presumed economic prejudice.  See id.

/ / /

Moving on, like Plaintiffs' inability to rebut evidentiary prejudice, Plaintiffs again fail to produce or identify evidence that creates a genuine issue of material fact as to economic prejudice. See id. at 1033. Plaintiffs reference an "Ex. B, at p. 13" to support the proposition that "Mr. Evans provided Cabela's with 'a document stating how or why its tent did not infringe any of the vehicle tent patents in existence,'" but Exhibit B attached to Plaintiffs' opposition brief does not contain that quote. (See Pls.' Opp'n Ex. B.) And it is not the Court's duty to scour the record to find the source of that quotation. See Keenan, 91 F.3d at 1279. Even if supported by evidence, Plaintiffs' proposition is ultimately irrelevant to rebutting the economic-prejudice presumption.

In sum, based on the undisputed facts, Defendant is entitled to the laches presumption, which Plaintiffs fail to rebut. See Aukerman, 960 F.2d at 1037. Plaintiffs fail to satisfy their burden of production to show that there is a genuine issue of material fact as to evidentiary and economic prejudice. See id. Therefore, Plaintiffs are barred from seeking relief for damages accrued prior to the initiation of this lawsuit for their patent-infringement claim. See Serdarevic, 532 F.3d at 1360-61; Odetics, 185 F.3d at 1272-73.

### B. Equitable Estoppel

Equitable estoppel is a defense addressed to the "sound discretion of the trial court." Aukerman, 960 F.2d at 1041 (citing Jamesbury, 839 F.2d at 1553). "Where equitable estoppel is established, all relief on a claim may be barred." Id. It is neither "limited to a particular factual situation nor subject to resolution by simple or hard and fast rules." Id. The doctrine of equitable estoppel requires: "(1) misleading conduct, which may include not only statements and actions but silence and inaction, leading another to reasonably infer that rights will not be asserted against it; (2) reliance upon this conduct; and (3) due to this reliance, material prejudice if the delayed assertion of such rights is permitted." Mabus v. Gen. Dynamics C4 Sys., Inc., 633 F.3d 1356, 1359 (Fed. Cir. 2011) (quoting Lincoln

Logs Ltd. v. Lincoln Pre-Cut Log Homes, Inc., 971 F.2d 732, 734 (Fed. Cir. 1992));
see also Aukerman, 960 F.2d at 1041. "Delay in filing suit may be evidence which
influences the assessment of whether the patentee's conduct is misleading but it is
not a requirement of equitable estoppel." Aukerman, 960 F.2d at 1042.

"To show reliance, the infringer must have had a relationship or
communication with the plaintiff which lulls the infringer into a sense of security in
going ahead with [its investments]." Aukerman, 960 F.2d at 1043. A defendant
need not prove precisely what alternative paths it would have taken, or that every
marketing decision was based on reliance on a plaintiff's silence. See Aspex
Eyewear, 605 F.3d at 1312.

Though a majority of Plaintiffs' opposition is that disputes of material fact
exist regarding prejudice, they also argue that a dispute of material fact exists
regarding reliance. Plaintiffs contend that Defendant did not rely on Plaintiffs'
silence, but rather Defendant "relied on its own investigation before the purchase as
well as non-infringement opinions obtained *after* Lakeland Enterprises was
purchased." (Pls.' Opp'n 9:18–10:3, 11:16–13:16.)

Whether Defendant took into account and relied on Plaintiffs' silence is in
dispute here. See Aspex Eyewear, 605 F.3d at 1312. Plaintiffs present a plausible
reasonable inference that can be drawn from the undisputed facts that Defendant
relied on its own investigation in developing its truck-tent business. (Pls.' Opp'n
11:16–13:16.) They direct the Court to evidence, such as responses to
interrogatories and patent-review opinions, that shows that Defendant heavily
consulted third parties before making its decision to proceed with the truck-tent
business. (See Def.'s Mot. Ex. 26; see also Pls.' Opp'n 11:16–12:20.) In addition
to the aforementioned evidence, Plaintiffs direct the Court to Defendant's own
statements that purportedly show that the purchase of Lakeland "was a business
decision based on its own independent investigation that would have been made
regardless of any reliance on Plaintiffs' silence." (Pls.' Opp'n 11:16–12:16 (citing

12cv1369

various statements presented by Defendant).)  This directly contradicts Defendant's interpretation of the undisputed facts that it relied on Plaintiffs' non-responsiveness and silence when it decided to develop and continue the truck-tent business.  (See, e.g., Evans Decl. ¶ 5.)  Both interpretations are reasonable inferences that can be drawn from the undisputed facts.

Because Defendant is the moving party on this issue, the Court must view all inferences drawn from the underlying facts in the light most favorable to Plaintiffs. See Matsushita, 475 U.S. at 587.  Even though there is evidence—for example, Mr. Evans' declaration—directly stating that Defendant relied on Plaintiffs' silence, it is improper for the Court to make credibility determinations or weigh evidence.  See Anderson, 477 U.S. at 255.  "[T]he drawing of legitimate inferences from the facts are jury functions, not those of a judge, [when] he [or she] is ruling on a motion for summary judgment."  Id.  Taking that into consideration, the Court has no choice but to conclude that a dispute of material fact exists as to whether Defendant relied on Plaintiffs' inaction and silence.  See id.; Matsushita, 475 U.S. at 587.  Therefore, the doctrine of equitable estoppel does not bar Plaintiffs' patent-infringement claim at this stage of litigation.[5]  See Aspex Eyewear, 605 F.3d at 1312.

## CONCLUSION

In light of the foregoing, the Court **DENIES** Plaintiffs' motion for partial summary judgment, and **GRANTS IN PART** and **DENIES IN PART** Defendant's cross-motion for partial summary judgment.  Specifically, under the doctrine of laches, Plaintiffs are barred from seeking relief for damages that accrued prior to the initiation of this lawsuit for their patent-infringement claim.  See Serdarevic, 532 F.3d at 1360-61; Odetics, 185 F.3d at 1272-73.  However, Plaintiffs' patent-infringement claim is not barred by the doctrine of equitable estoppel.  See Aspex

---

[5] The Court need not address material prejudice because Defendant fails to show that the undisputed facts establish that it relied on Plaintiffs' silence in developing its truck-tent business. See Mabus, 633 F.3d at 1359.

Eyewear, 605 F.3d at 1312.  This amended order supersedes the Court's previous

order issued on October 2, 2013, Enel Co., LLC v. Schaefer, No. 12-cv-1369-

IEG(WMC), 2013 WL 5504434 (S.D. Cal. Oct. 2. 2013).

IT IS SO ORDERED.


DATED: October 21, 2013

IRMA E. GONZALEZ
United States District Judge